**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| GFP ENTERPRISES LLC *a.k.a* GFP RESPONSE LLC,<br><br>*Plaintiff*,<br>v.<br><br>GARNER ENVIRONMENTAL SERVICES, INC.,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:24-cv-04517 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GARNER ENVIRONMENTAL SERVICES, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**MCDERMOTT WILL & EMERY LLP**

David Genender
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295 8000

Jordan Kazlow
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
(713) 653-1700

Andrew B. Kratenstein (admitted *pro hac vice*)
Alexandra Nasar (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
(212) 547-5400

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....... 1

STATEMENT OF FACTS ....... 2

I. THE MASTER SERVICES AGREEMENT AND PURCHASE ORDERS ....... 2

II. GARNER'S REQUEST FOR PRICING INFORMATION ....... 3

III. THE TRANSITION AGREEMENT AND TERMINATION OF GFP'S SERVICES ....... 4

IV. GFP SUES GARNER ....... 5

V. AFTER A "WRITING ON THE WALL" PRE-MOTION CONFERENCE, GFP MOVES TO TRANSFER THE CASE TO THIS COURT ....... 6

ARGUMENT ....... 7

I. COUNTS THAT FAIL TO STATE A CLAIM SHOULD BE DISMISSED ....... 7

II. GFP FAILS TO STATE A CLAIM FOR Tortious Interference With PROSPECTIVE BUSINESS RELATIONS (COUNT I) ....... 8

A. GFP Fails to Allege the Existence of Prospective Business Relationships ....... 9

B. GFP Does Not Plausibly Plead Intentional and Malicious Interference ....... 10

C. GFP Fails to Allege That Garner's Actions Were Independently Tortious ....... 11

D. GFP Fails to Allege that Garner's Interference Proximately Caused Injury ....... 13

E. GFP Fails to Allege Damage or Loss as a Result of the Alleged Interference ....... 14

F. GFP's Tortious Interference Claims are Duplicative ....... 14

III. GFP FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS ....... 15

A. GFP Fails to Allege the Existence of a Contract Subject to Interference ....... 16

B. GFP Fails to Allege that Garner Willfully and Intentionally Interfered ..... 16

C. GFP Fails to Allege that the Alleged Interference Proximately Caused a Vendor to Breach a Contract with GFP ..... 17

D. GFP Fails to Allege It Was Damaged as a Result of the Alleged Interference ..... 19

IV. GFP FAILS TO STATE A CLAIM FOR FRAUD ..... 19

A. GFP Fails to Plausibly Allege a Knowingly or Recklessly False Representation ..... 20

B. GFP's Fraud Claim Fails to Plausibly Allege Injury and is Duplicative ..... 21

CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ... 7

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
No. 4:15-CV-00627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016) ... 11, 19

*Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*,
472 S.W.3d 744 (Tex. App. 2015) ... 13

*Brown v. Wilson Cnty.*,
No. SA-97-CA-1473-OG, 1999 WL 33290666 (W.D. Tex. Mar. 31, 1999) ... 10

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ... 7

*Curtis v. Cerner Corp.*,
621 B.R. 141 (S.D. Tex. 2020) ... 20, 21

*Daryani v. Wells Fargo Bank, N.A.*,
2012 WL 3527924 (S.D. Tex. Aug. 13, 2012) ... 22

*DT Apartment Grp., LP v. CWCapital, LLC*,
No. 3:12-CV-0437-D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012) ... 13

*Farshchi v. Wells Fargo Bank, N.A.*,
No. CV H-15-1692, 2016 WL 2858903 (S.D. Tex. May 13, 2016) ... 19, 20, 22

*Fast Cap. Mktg., LLC v. Fast Cap. LLC*,
No. CIV. A. H-08-2142, 2008 WL 5381309 (S.D. Tex. Dec. 24, 2008) ... 13

*Geolink Ltd. (U.K.) v. Mahmood*,
No. 4:21-CV-803, 2022 WL 2124519 (S.D. Tex. Mar. 18, 2022) ... *passim*

*Gonzales v. Bank of Am., N.A.*,
No. CIV.A. G-12-292, 2013 WL 140093 (S.D. Tex. Jan. 10, 2013) ... 22

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
No. CIV.A. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015) ... *passim*

*Heil Co. v. Polar Corp.*,
191 S.W.3d 805 (Tex.App.—Fort Worth 2006, pet. denied) ... 22

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ....7

*Keane v. Fox Television Stations, Inc.*,
297 F. Supp. 2d 921 (S.D. Tex. 2004), *aff'd,* 129 F. App'x 874 (5th Cir. 2005)....3

*M-I LLC v. Stelly*,
733 F. Supp. 2d 759 (S.D. Tex. 2010) ....14, 16, 17, 18

*Montalvo v. Specialized Loan Servicing LLC*,
No. SA-21-CV-00964-JKP, 2022 WL 3031078 (W.D. Tex. July 30, 2022)....21

*Montoya v. FedEx Ground Package Sys., Inc.*,
614 F.3d 145 (5th Cir. 2010) ....7

*O'Connor v. Cory*,
No. 3:16-CV-1731-B, 2018 WL 5117197 (N.D. Tex. Oct. 19, 2018), *aff'd sub nom. Cory v. Stewart*, 103 F.4th 1067 (5th Cir. 2024) ....8

*Oppenheimer v. Prudential Sec. Inc.*,
94 F.3d 189 (5th Cir. 1996) ....21

*Priority Design & Serv., Inc. v. Plaza*,
SA-19-CV-00058-OLG, 2019 WL 2124677 (W.D. Tex. May 15, 2019) ....13, 14, 19

*Quicksilver Res., Inc. v. Eagle Drilling, LLC*,
792 F. Supp. 2d 948 (S.D. Tex. 2011) ....8

*Richter v. Carnival Corp.*,
No. 3:18-CV-2172-N, 2020 WL 1876098 (N.D. Tex. Apr. 15, 2020), *aff'd*, 837 F. App'x 260 (5th Cir. 2020) ....13

*Savancys Inc. v. Trendset IT Inc.*,
No. 3:24-CV-0139-S, 2024 WL 4448672 (N.D. Tex. Oct. 8, 2024) ....18

*Staton Holdings, Inc. v. Russell Athletic, Inc.*,
No. 3:09-CV-0419-D, 2009 WL 4016117 (N.D. Tex. Nov. 20, 2009) ....12, 14, 15, 16

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
No. 3:18-CV-0587-N, 2021 WL 9145415 (N.D. Tex. Mar. 24, 2021)....18

*VTX Commc'ns, LLC v. AT&T Inc.*,
No. 7:19-CV-00269, 2020 WL 4465968 (S.D. Tex. Aug. 4, 2020) ....8

**Other Authorities**

Federal Rule of Civil Procedure 9(b)....20

Federal Rule of Civil Procedure 12(b)(6) ....7, 22

## PRELIMINARY STATEMENT

This case is a contract dispute and nothing more. Plaintiff GFP Enterprises LLC a.k.a. GFP Response LLC ("GFP") alleges that Defendant Garner Environmental Services, Inc. ("Garner") breached the parties' agreements, which set venue in Texas, concerning the Floyd Bennett Field and Randall's Island Asylum Seeker Facilities (the "Facilities"). However, for tactical reasons, GFP sued in New York and improperly alleged a tortious conspiracy amongst Garner, two "vendors," and the City of New York (the "City"). After the New York court deconstructed those frivolous claims during a pre-motion conference, GFP dismissed the other defendants and moved to transfer the case to this Court.

GFP then amended its complaint a second time, again reaching to plead tort claims where there are none. In addition to alleging breach of contract, GFP's Second Amended Complaint ("SAC") asserts claims for tortious interference with both prospective business relations and existing contracts and for fraud. These claims are based on Garner's alleged effort to "cut GFP out of the Asylum Seeker Facilities" by obtaining GFP's allegedly confidential pricing information and then contracting directly with certain vendors. However, GFP does not identify: (1) any specific contract with any vendor that was breached due to Garner's alleged interference; (2) what agreements or transactions, if any, GFP would have completed with the so-called "vendors" but for Garner's alleged interference; (3) that Garner made any knowingly or recklessly false representation, engaged in any independently tortious behavior, or that any interference was more than incidental; or (4) any damages caused by such behavior that is not also claimed in GFP's breach of contract claim. Accordingly, GFP's tort claims should be dismissed.

## STATEMENT OF FACTS

### I. THE MASTER SERVICES AGREEMENT AND PURCHASE ORDERS

In response an emergency migrant housing crisis, the City contracted with Garner to provide environmental response services at the Facilities. (SAC ¶¶ 19-21; Declaration of Todd Riddle, dated January 31, 2025 ("Riddle Decl.") ¶ 3.)[1] Garner sub-contracted certain services to GFP pursuant to the Master Services Agreement (the Subcontract Agreement For Environmental Response Services) ("MSA"), dated August 22, 2022. (SAC ¶ 20; Riddle Decl. ¶ 4, Ex. A.) The MSA states that it, along with associated purchase orders (the "Purchase Orders"), represents "the entire agreement between [Garner] and [GFP] with respect to the identified project, services and Work and/or Client specified." (Riddle Decl. ¶ 5, Ex. A § 18.1.) The "identified project" includes GFP's services at the Facilities. (SAC ¶¶ 20-21.)

The MSA's forum selection and choice-of-law clause (Section 16.2) states that the agreement "is being performed in Harris County, Texas," and shall be "interpreted and enforced pursuant to the laws of the State of Texas." The MSA requires that any suit "in connection [ ]with" the MSA be brought in "Harris County, Texas." (Riddle Decl. Ex. A § 16.2.)

Section 14 of the MSA pertains to "Confidential Information." All confidentiality obligations concern "[i]nformation obtained by Subcontractor" [i.e., GFP] and thus run *from GFP to Garner*. By contrast, the MSA imposes no confidentiality obligation on Garner. (*Id*. § 14.)

The MSA allows Garner to terminate the MSA and its related agreements for any reason and at any time upon written notice to GFP. Specifically, Section 15.1 states that Garner "reserves the right to cancel or suspend, at any time, by written notice, in whole or in part, a Task Order or Scope of Work hereunder, or this Agreement." (Riddle Decl. ¶ 8, Ex. A § 15.1.)

---

[1] The Riddle Declaration is provided for context only and Garner does not rely on any factual statements outside of those in the SAC and the exhibits incorporated by reference therein.

Garner could therefore terminate or demobilize GFP's services for any reason and at any time upon written notice. Nor is there any requirement for "formal demobilization task orders," as GFP wrongly contends. (*Compare* Riddle Decl. Ex. A *with* SAC ¶¶ 58, 60.)[2]

On August 4, 2023, Garner submitted a Purchase Order to GFP for the first 30 days of performance at Randall's Island, from August 20 through September 18, 2023. (SAC ¶ 28; Riddle Decl. ¶ 9, Ex. B.) On October 3, 2023, Garner submitted a Purchase Order to GFP for the first 30 days of performance at Floyd Bennett Field. (SAC ¶ 38; Riddle Decl. ¶ 10, Ex. C.) GFP claims that the Purchase Orders "identified . . . the price to be paid by Garner to GFP, as well as the minimum performance period for those services." (SAC ¶ 22.) However, the Purchase Orders that Garner issued in connection with the Facilities did not guarantee any amount or duration of work. (*Compare* Riddle Decl. ¶ 11, Exs. B-C *with* SAC ¶¶ 22, 29.)

## II. GARNER'S REQUEST FOR PRICING INFORMATION

By March 2024, the Facilities had been in operation for months and the emergency had passed. On March 8, 2024, JP Temperilli, Garner's then Senior Project Manager, emailed GFP requesting – not "demanding" as GFP alleges (SAC ¶ 50) – a breakdown of billings *from GFP to Garner* (not pricing from GFP's vendors to GFP). The email stated:

> As we transition here in New York and aim to optimize the project, we are hoping to get a bit more visibility into the numbers that create the aggregate per person per day (pppd) rates at the Randall's Island and Floyd Bennett Field sites. We may want to discuss further details in the coming days/week but for now we are looking for a breakdown in the following way:
> 1. Tents
> 2. Power & HVAC (Light Plants, Spider Boxes, cabling etc included)
> 3. Sanitation (and supporting equipment)
> 4. Personnel (w/staff quantities)
> 5. Fueling
> 6. Any ancillary support that may not lump into the above categories.

---

[2] When a plaintiff attaches documents to a complaint that contradict statements in the complaint itself, the more specific document controls. *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004), *aff'd,* 129 F. App'x 874 (5th Cir. 2005).

> Any further detail you wish to provide would be appreciated, but for the sake of timeliness these are the big numbers we need to focus on to start.

(Riddle Decl. Ex. D.) GFP provided the requested information on March 10, 2024. (SAC ¶ 55; Riddle Decl. ¶ 14, Ex. E.) The information provided by GFP is a breakdown of costs from GFP to Garner, categorized by general task descriptions such as lighting, flooring, restroom trailers, etc. (*Id.*) It does *not* reveal GFP's pricing with any vendor. (*Id.*) GFP's response did not in any way, shape, or form state that any of the information provided was confidential. (*Id.*)

The SAC alleges that "JP Temperilli falsely represented to . . . GFP that this information was required in order to assess savings to pass on to the City when in fact . . . Garner was keeping most, if not all, GFP's profits for its own benefit." (SAC ¶ 53.) This claim is irrelevant and unsupported.

## III. THE TRANSITION AGREEMENT AND TERMINATION OF GFP'S SERVICES

Nothing in the MSA prohibited Garner from contracting with vendors to secure more favorable rates than GFP offered for servicing the Facilities. (Riddle Decl. Ex. A.) Nor did the MSA state that GFP's authorization was required for Garner to de-mobilize GFP and mobilize other vendors at the Facilities. (*Compare* Riddle Decl. Ex. A *with* SAC ¶¶ 60, 76.) Rather, Section 15.1 of the MSA allowed Garner "to cancel or suspend, at any time, by written notice, in whole or in part, a Task Order or Scope of Work hereunder, of this Agreement." (Riddle Decl. ¶ 8, Ex. A § 15.1.) Garner provided such written notice to GFP on March 15, 2024. (SAC ¶¶ 59-60, 68; Riddle Decl. ¶ 15, Ex. F.)

On April 5, 2024, Garner and GFP entered into a Transition Agreement, which is styled as an "amendment of the Master Agreement solely with respect to the terms provided herein," and pursuant to which GFP agreed to transfer certain assets to Garner and demobilize in exchange for

certain payments from Garner. (SAC ¶ 79; Riddle Decl. ¶ 16, Ex. G § 1.) Like the MSA, the Transition Agreement imposes no confidentiality obligation on Garner. (Riddle Decl. Ex. G.)

The MSA and Transition Agreement (collectively, the "Agreements") do not require that GFP be fully demobilized before other vendors begin mobilization preparations. (Riddle Decl. Exs. A, G.) On April 6, 2024, G&H Enterprises LLC d/b/a Rentals to Go ("Rentals to Go") began preparations to mobilize at Floyd Bennett Field, in accordance with a separate contract between Garner and Rentals to Go. (SAC ¶ 80.)

## IV. GFP SUES GARNER

GFP filed this action on August 9, 2024, in the United States District Court for the Southern District of New York. GFP claimed that Garner breached the Agreements, tortiously interfered with GFP's prospective economic relations with vendors and was unjustly enriched, and sought a declaration that the MSA's forum selection clause was unenforceable. (ECF No. 1, ¶¶ 120-59.) GFP also sued Rentals to Go and DJ Doctor LLC d/b/a iRent Everything ("iRent Everything") for tortious interference and named the City as a "nominal defendant." (*Id.* ¶¶ 120-27, 160-69.)[3] The case was assigned to Judge Gregory H. Woods.

Pursuant to Judge Woods' Individual Practices, Garner filed a pre-motion letter on September 30, 2024 (ECF No. 27) seeking a pre-motion conference on a proposed motion to dismiss the case based on the MSA's forum selection clause and to dismiss Counts I and IV for tortious interference and unjust enrichment, respectively. GFP filed a letter opposing Garner's proposed motion in all respects. (ECF No. 35.)

---

[3] After GFP served the First Amended Complaint, Garner attempted through counsel to engage with GFP on the amounts owed to GFP under the Agreements. (Riddle Decl. ¶ 18.) GFP's counsel did not substantively engage. (*Id.*) Accordingly, Garner served an offer of judgment in the amount of $1.1 million, which is the amount that Garner believed it owed GFP (including GFP's attorney's fees and costs to date). (*Id.*, Ex. H.) GFP did not substantively respond and so Garner subsequently paid GFP what Garner believed it owed GFP under the parties' contracts. (*Id.*)

## V. AFTER A "WRITING ON THE WALL" PRE-MOTION CONFERENCE, GFP MOVES TO TRANSFER THE CASE TO THIS COURT

On October 16, 2024, Judge Woods held a pre-motion conference. It did not go well for GFP. At the conclusion of the hearing argument, Judge Woods stated that Garner and the other defendants "have made some substantial arguments, which if successful would result in the dismissal of claims against three of the four defendants here, and which if successful would result in litigation of [the] breach of contract claim [against Garner], at the very least, in a forum other than this court" and that "[t]he defendants have made a strong showing that they have meritorious arguments with respect to each of those issues." (ECF No. 43 at 37:15-23.) Judge Woods also invited the City of New York to serve a "safe harbor letter under Rule 11 with respect to the claims against the city." (*Id.* at 32:4-5.) Judge Woods subsequently ordered defendants to file their motions to dismiss on November 18, 2024. (ECF No. 42.)

Seeing the writing on the wall, GFP voluntarily dismissed the other defendants from the case. (ECF Nos. 45-47.) GFP then filed a motion to transfer to venue to this Court (ECF Nos. 49-50), to which Garner consented (ECF No. 54). On November 13, 2024, Judge Woods ordered the transfer. (ECF No. 55). Pursuant to a stipulation and order (ECF No. 70), GFP filed the SAC on December 31, 2024 (ECF No. 73).

# ARGUMENT

## I. COUNTS THAT FAIL TO STATE A CLAIM SHOULD BE DISMISSED

GFP's tort claims (Counts I, II, and V) fail to state a claim. Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" allowing the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept well-pleaded factual allegations as true, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678-81. Dismissal is appropriate where the plaintiff fails to "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (citation omitted).

In deciding a motion to dismiss under Rule 12(b)(6), the Court may consider documents that a defendant attaches to a motion to dismiss as "part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Here, GFP alleges breach of contract, fraud, and tortious interference based on conduct in connection with the Agreements. (SAC ¶¶ 108-49.) Thus, the Agreements, Purchase Orders, and communications referenced by GFP in the SAC can and should be considered on this motion because they are referenced in and "central" to the SAC. *See, e.g.*, *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (holding that an agreement and assessment about a potential merger were incorporated by reference where they were "central" to the complaint).

## II. GFP FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS (COUNT I)

Under Texas law,[4] to prevail on a claim for tortious interference with prospective business relations, a plaintiff must show: "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Geolink Ltd. (U.K.) v. Mahmood*, No. 4:21-CV-803, 2022 WL 2124519, at *7 (S.D. Tex. Mar. 18, 2022). Interference is intentional if "the defendant had actual knowledge of the prospective business relations . . . [and] the defendant intended to interfere or was substantially certain that interference would result, but not if the interference was incidental." *Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. CIV.A. 4:14-0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10, 2015). Further, "tortious interference with prospective business relations requires that the plaintiff show independently tortious or unlawful

[4] As the forum state, Texas's choice-of-law rules determine which state's law applies. *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 951 (S.D. Tex. 2011). Texas law generally honors contractual choice-of-law provisions, and "such provisions may cover both tort and contract claims." *Id.* Section 16.2 of the MSA states that "the validity, interpretation and performance of this Agreement and the contents herein are to be interpreted and enforced pursuant to the laws of the State of Texas without regard to its conflicts of law rules or principles." (Riddle Decl. Ex. A § 16.2.) GFP's tortious interference and fraud claims relate to the subject matter and "performance" of the Agreements, namely GFP's work concerning the Facilities. Thus, the Texas choice-of-law provision extends to those claims. *See O'Connor v. Cory*, No. 3:16-CV-1731-B, 2018 WL 5117197, at *9 (N.D. Tex. Oct. 19, 2018) ("Because Plaintiffs' Texas securities-fraud claim arises from or relates to 'the transactions contemplated [by the Agreement],' the choice-of-law clause governs the claims."), *aff'd sub nom. Cory v. Stewart*, 103 F.4th 1067 (5th Cir. 2024); *VTX Commc'ns, LLC v. AT&T Inc.*, No. 7:19-CV-00269, 2020 WL 4465968, at *5 (S.D. Tex. Aug. 4, 2020) ("Where a clause implicate[s] construction of the rights and liabilities of the parties under the contract, it is generally broad enough to cover tort claims.") (internal quotations omitted).

conduct by the defendant." *Id.* To satisfy this requirement GFP must plead that Garner's conduct "would be actionable under a recognized tort." *Id.* (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)).

GFP does not and cannot plead these elements. The SAC fails to allege: (1) whether and how GFP had a reasonable probability of entering certain relationships or transactions with third parties; (2) whether and how Garner knew of any of these relationships; (3) that Garner's alleged interference was intentional or malicious; (4) that Garner engaged in independently tortious conduct; (5) what agreements or transactions, if any, GFP would have completed with each vendor but for Garner's alleged interference; and thus (6) what, if any, harm GFP actually incurred. In addition, (7) the tortious interference claims are duplicative of GFP's breach of contract claims.

**A. GFP Fails to Allege the Existence of Prospective Business Relationships**

A claim for tortious interference with prospective business relations requires "a reasonable probability that the plaintiff would have entered into a business relationship with a third party." *Geolink Ltd. (U.K.)*, 2022 WL 2124519, at *7 (citations omitted). In addition, "mere negotiations" are insufficient, and "an expectation of a potential project does not plead a reasonable probability of a potential business relationship." *Id.* (citations omitted).

GFP does not satisfy this element. The SAC vaguely states that GFP had "contractual relationships" and "business relationships" with 21 vendors at the Facilities. (SAC ¶¶ 5, 30, 100, 109, 118.) However, the SAC does not allege with which vendors GFP had existing "contractual relationships" versus other "business relationships" at the time of Garner's alleged interference. Of the 21 vendors, 17 of them are mentioned in one or two conclusory sentences, which do not explain how or why GFP had a "reasonable probability" of entering relationships or transactions with any vendor. (*Id.* ¶¶ 97, 99, 109.) Of the remaining four vendors, GFP refutes any assertion that it would have entered business relations with iRent Everything and

Rentals to Go (the former co-Defendants that GFP voluntarily dismissed) by alleging that they "conspired [with Garner] . . . to cut GFP out of the Asylum Seeker Facilities entirely." (*Id.* ¶ 73.) The SAC is also devoid of allegations demonstrating that GFP would have entered business relationships with the remaining two vendors, Lantier Tent Structures and Main Attractions. (*Id.* ¶¶ 95-98, 103, 109.)

**B. GFP Does Not Plausibly Plead Intentional and Malicious Interference**

To state a claim for tortious interference with prospective business relations, GFP must plead that Garner's conduct was "an intentional, malicious intervention or an independently tortious or unlawful act." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19 (citations omitted). "Malice in this connection is not to be understood in its ordinary sense of ill will against a person, but in its legal sense as characterizing an unlawful act done intentionally without just cause or excuse." *Brown v. Wilson Cnty.*, No. SA-97-CA-1473-OG, 1999 WL 33290666, at *17 (W.D. Tex. Mar. 31, 1999) (citations omitted). Interference "is intentional if the defendant had actual knowledge of the prospective business relations . . . [and] the defendant intended to interfere or was substantially certain that interference would result, but not if the interference was incidental." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19 (citation omitted).

First, "[t]o show that a defendant's interference was intentional, a plaintiff must show that the defendant had actual knowledge of the prospective business relations." *Id.* GFP alleges that "Garner was aware of GFP's probability of entering into and continuing business relationships with the GFP Vendors as demonstrated by the 30-day minimum guarantee performance periods GFP entered into with its vendors to retain the GFP Vendor's assets and discounted pricing." (SAC ¶ 110.) However, "Plaintiff's reliance on Defendants' industry knowledge does not equate to knowledge in the existence of [Plaintiff's] contracts and business relationships." *Geolink Ltd. (U.K.),* 2022 WL 2124519, at *8; *see also Greater Houston Transp.*, 2015 WL 1034254,

at *18 ("Knowledge of Plaintiffs' business and of the existence of individual drivers does not demonstrate knowledge of individual contracts."). For this reason alone, the tortious interference claim must be dismissed. *See BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 WL 8648927, at *11 (S.D. Tex. Mar. 29, 2016) (dismissing tortious interference counterclaim because "[i]t is utterly devoid of any factual allegation that [Plaintiff] had actual knowledge of a prospective business relation and its desire to interfere in that relation was its primary purpose in doing so.").

Second, "interference is not improper if the defendant had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose." *Id.* at *11 (internal quotations and citations omitted). The SAC itself refutes any assertion that Garner's actions were for the purpose of harming or interfering with GFP's relationships, as the SAC alleges (albeit falsely) that "Garner was keeping most, if not all, GFP's profits for its own benefit." (SAC ¶ 53.)

**C. GFP Fails to Allege That Garner's Actions Were Independently Tortious**

GFP must also plausibly plead that Garner's conduct was "an independently tortious or unlawful act." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19 (citation omitted). "[T]ortious interference with prospective business relations requires that the plaintiff show independently tortious or unlawful conduct by the defendant." *Id.* (citations omitted). Independently tortious or unlawful conduct means that the "defendant's conduct would be actionable under a recognized tort." *Id.* (citing *Wal-Mart Stores, Inc.*, 52 S.W.3d at 726).

GFP claims that Garner used independently tortious or wrongful means by breaching the Agreements, fraudulently acquiring and using GFP's pricing information, contracting directly with the vendors, and conspiring with iRent Everything and Rentals to Go to "cut GFP out of the Asylum Seeker Facilities." (SAC ¶¶ 111-13.) None of these allegations (separately or

collectively) establishes independently tortious or wrongful conduct, as Judge Woods observed at the pre-motion conference. (ECF No. 43 at 20:6-23:19.)

GFP claims that Garner committed a tort by breaching the Agreements' provisions concerning billing rates and cycles and contracting directly with vendors who had previously contracted with GFP. (SAC ¶¶ 83-93.) But an alleged breach of contract does not establish independently tortious or wrongful conduct. *Staton Holdings, Inc. v. Russell Athletic, Inc.*, No. 3:09-CV-0419-D, 2009 WL 4016117, at *3 (N.D. Tex. Nov. 20, 2009) ("[A] breach of contract does not alone constitute a separate tort.") (citations omitted).

In addition, neither the Agreements nor the law precludes Garner from seeking better prices directly from vendors and cutting out unnecessary middlemen. In *Specialties of Mexico Inc. v. Masterfoods USA*, the court dismissed a claim for tortious interference with prospective business relations because "Plaintiffs have not alleged how Defendant's instruction to Sell-Thru to stop selling their goods to Plaintiffs rises above the level of 'sharp or unfair' conduct, and amounts to an independently actionable tort." No. CIV.A. L-09-88, 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010) (citing *Wal-Mart Stores, Inc.,* 52 S.W.3d at 726) ("[A] plaintiff could not recover against a defendant whose persuasion of others not to deal with the plaintiff was lawful. Conduct that is merely 'sharp' or unfair is not actionable.")).

GFP's conclusory allegation that Garner "fraudulently obtained GFP confidential vendor pricing information" (SAC ¶ 99) likewise does not establish independently tortious conduct related to any act of interference. The emails incorporated by reference in the SAC demonstrate that Garner requested a breakdown of *GFP's pricing to Garner* (not vendors' pricing to GFP). (SAC ¶¶ 50-51, 55; Riddle Decl. ¶¶ 13-14, Exs. D-E.)

GFP also did not indicate that any of the information it provided in response was confidential, thereby waiving any claim of confidentiality by failing to attempt to protect the disclosed information. (*See* Riddle Decl. Ex. E.) Indeed, the confidentiality clause in the MSA protects only *Garner's information, not GFP's*. (Riddle Decl. Ex. A § 14.1-4.) If GFP wanted a confidentiality or other non-use agreement, GFP should have asked for one. It did not. *See DT Apartment Grp., LP v. CWCapital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at *12 (N.D. Tex. Dec. 26, 2012) ("Texas does not recognize a claim for misuse of confidential information that is not either secret or, at least substantially secret."); *Richter v. Carnival Corp.*, No. 3:18-CV-2172-N, 2020 WL 1876098, at *6 (N.D. Tex. Apr. 15, 2020) ("[Plaintiff] failed to sufficiently allege that she kept the information secret, or substantially secret."), *aff'd*, 837 F. App'x 260 (5th Cir. 2020); *see also Fast Cap. Mktg., LLC v. Fast Cap. LLC*, No. CIV. A. H-08-2142, 2008 WL 5381309, at *18 (S.D. Tex. Dec. 24, 2008) (dismissing tortious interference claim where information disclosed did not qualify as "confidential information" under relevant contract). Thus, GFP's claim fails for this additional reason.

**D. GFP Fails to Allege that Garner's Interference Proximately Caused Injury**

A claim for tortious interference with prospective business relations requires that the plaintiff establish facts showing that it would have done business with a third party but for the defendant's interference. *Priority Design & Serv., Inc. v. Plaza*, SA-19-CV-00058-OLG, 2019 WL 2124677, at *4-5 (W.D. Tex. May 15, 2019). "To recover for tortious interference with prospective business relations, the plaintiff must demonstrate that the alleged interference prevented the plaintiff from securing a contract." *Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*, 472 S.W.3d 744, 770 (Tex. App. 2015).

GFP fails to allege what business, if any, GFP would have completed with each vendor but for Garner's alleged interference. The SAC is devoid of any allegations that Garner persuaded

any vendor not to transact with GFP, such as by "offering better terms or other incentives". *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 774 (S.D. Tex. 2010). Thus, the SAC fails to allege how Garner intentionally and knowingly interfered with any specific relationship or potential transaction between a vendor and GFP.

**E. GFP Fails to Allege Damage or Loss as a Result of the Alleged Interference**

GFP must plead that it "suffered actual damage or loss as a result" of Garner's alleged interference. *Geolink Ltd. (U.K.)*, 2022 WL 2124519, at *7 (citations omitted). The SAC baldly claims that Garner "caused injury" to GFP's relationships with the vendors. (SAC ¶¶ 112-13.) Without plausibly alleging that there was a reasonable probability that a certain contract or transaction would have been entered into by GFP and the vendor but for Garner's interference, there can be no plausible resulting injury. GFP's allegations thus "amount to nothing more than a formulaic recitation of the elements of these causes of action, which is insufficient to state a claim." *Priority Design & Serv., Inc.*, 2019 WL 2124677, at *5 (citations omitted). GFP's claim thus fails for this reason too.

**F. GFP's Tortious Interference Claims are Duplicative**

Finally, a tortious interference claim that is duplicative of breach of contract claim fails. *Staton Holdings, Inc.*, 2009 WL 4016117, at *3 ("Under Texas law, a breach of contract does not alone constitute a separate tort."). For the tort claim to survive, there must be a legal duty independent of the contract that has been violated. By contrast, "[w]here an act gives rise to liability only because it breaches the parties' contract, the plaintiff's claim sounds only in contract." *Id.* (citations omitted).

GFP's tortious interference claims rely on the allegations that Garner "breach[ed] the Transition Agreement" and "cut GFP out of the Asylum Seeker Facilities." (SAC ¶¶ 111-13, 119.) However, as GFP admits, the Agreements govern the GFP-Garner relationship concerning the

Facilities. (*Id*. ¶¶ 20-22, 79; Riddle Decl. ¶ 5, Ex. A § 18.1.) The circumstances surrounding Garner's termination of GFP's services at the Facilities fall squarely within the Agreements' subject matter. (Riddle Decl. ¶ 8, Ex. A § 15.1.)

GFP's allegations thus neither support an independent tort nor plead any compensable damages distinct from the subject matter of the Agreements. *Staton Holdings, Inc.*, 2009 WL 4016117, at *3 ("[W]hen a plaintiff is only injured by loss of the subject matter of the contract, it only has an action for breach of contract.") (citations omitted). Accordingly, GFP's tortious interference claims are duplicative of GFP's breach of contract claims and should be dismissed for this additional reason.

## III. GFP FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

GFP's claim for tortious interference with existing contracts likewise fails. To state a claim for tortious interference with an existing contract, a plaintiff must allege: (1) the existence of a contract subject to interference; (2) willful and intentional interference; (3) interference that proximately caused damage; and (4) actual damage or loss." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19 (citations omitted). Further, "[a] defendant must also have actual knowledge of the contract, or knowledge of facts and circumstances that would lead a reasonable person to believe there was a contract." *Id.* (citations omitted). GFP must also show that "the defendant intended to interfere with the contract, or that the defendant believed that a breach of contract was substantially certain to result." *Id.* (citations omitted). Finally, "[m]erely entering into a contract with knowledge of a party's obligations is not an intentional interference; the defendant must induce or persuade the party to breach." *Id.* (citations omitted).

GFP's tortious interference with existing contracts claim fails because the SAC does not allege: (1) the existence of any specific contract with a third party subject to interference;

(2) whether and how Garner knew of said contracts; (3) what contracts, if any, were breached as a direct result of the alleged interference; and (4) what, if any, harm GFP actually incurred. In addition, (5) the tortious interference claims are duplicative of GFP's breach of contract claims.

### A. GFP Fails to Allege the Existence of a Contract Subject to Interference

A claim for tortious interference with existing contracts requires "the existence of a contract subject to interference." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19 (citations omitted); *see also M-I LLC*, 733 F. Supp. 2d at 774 (dismissing a tortious interference with contract claim where the plaintiff failed to identify the specific contract that was the subject of the alleged interference).

GFP fails this first element. The SAC vaguely states that GFP had "contractual relationships" with vendors or "existing contracts" with vendors and that "[i]n most instances . . . Garner was interfering with GFP's contractual relationships with its vendors while those vendors were still under contract with GFP." (SAC ¶¶ 5, 100, 118, 120.) However, the SAC does not state what contracts GFP had with each vendor, what the terms of those contacts were, nor what contracts were the subject of Garner's alleged interference. Merely stating that the plaintiff "had valid contracts with certain customers . . . fails entirely to allege or designate a specific contract that is the subject of interference." *M-I LLC*, 733 F. Supp. 2d at 774; *see also Staton Holdings, Inc.*, 2009 WL 4016117, at *5 ("Staton must . . . identify a specific customer with whom it had a specific contract with which Russell interfered."). GFP's tortious interference with contract claim fails for this reason alone.

### B. GFP Fails to Allege that Garner Willfully and Intentionally Interfered

To establish intent for the purposes of tortious interference with existing contracts, "[a] defendant must . . . have actual knowledge of the contract, or knowledge of facts and circumstances that would lead a reasonable person to believe there was a contract." *Greater Houston Transp.*

*Co.*, 2015 WL 1034254, at *18 (citations omitted). Allegations that the defendant knew generally of the "nature of [the plaintiff's] business relations" rather than "individual contracts" is insufficient. *Id.* Further, "Plaintiff's reliance on Defendants' industry knowledge does not equate to knowledge in the existence of [Plaintiff's] contracts and business relationships." *Geolink Ltd. (U.K.),* 2022 WL 2124519, at *8.

GFP fails to allege plausibly that Garner knew or should reasonably have known of any specific contracts between GFP and the vendors listed in the SAC. Again, the SAC's allegations that "Garner was aware of GFP's probability of entering into and continuing business relationships with the GFP Vendors as demonstrated by the 30-day minimum guarantee performance periods GFP entered into with its vendors" and that "Garner was well aware that GFP had valid and existing contracts with the GFP Vendors" (SAC ¶¶ 110, 120) are conclusory. *See Greater Houston Transp. Co.*, 2015 WL 1034254, at *18 ("Plaintiffs' claim that because Defendants knew that Plaintiffs operated in these cities, they knew of the nature of their business relations with individual drivers, is entirely conclusory. . . . Knowledge of Plaintiffs' business and of the existence of individual drivers does not demonstrate knowledge of individual contracts.") (citations omitted). Because GFP fails to allege Garner's knowledge or prospective knowledge of specific contracts between GFP and the vendors, the tortious interference claim must be dismissed.

### C. GFP Fails to Allege that the Alleged Interference Proximately Caused a Vendor to Breach a Contract with GFP

To plead proximate cause, "a plaintiff must allege that the defendant took an active part in persuading a party to a contract to breach it." *M-I LLC*, 733 F. Supp. 2d at 775 (quotations and citations omitted). "Merely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach. . . . It is necessary that there be some act of interference or of persuading a party to breach, for example by offering

better terms or other incentives, for tort liability to arise." *Id.* (quotations and citations omitted). GFP fails to meet this standard.

First, GFP does not allege that a single vendor actually breached any contract with GFP. *See Savancys Inc. v. Trendset IT Inc.*, No. 3:24-CV-0139-S, 2024 WL 4448672, at *2 (N.D. Tex. Oct. 8, 2024) ("Plaintiff must allege 'that some obligatory provision of a contract [was] breached.'") (citing *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 354 (5th Cir. 2021) (alteration in original)); *see also Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, No. 3:18-CV-0587-N, 2021 WL 9145415, at *2 (N.D. Tex. Mar. 24, 2021) ("[T]ortious interference with an existing contract requires that an actual breach occurred.") (citations omitted). GFP alleges that Garner "cut out" GFP from the Facilities by contracting directly with the vendors, but never alleges that any vendor breached any contract with GFP to go work directly with Garner. (SAC ¶¶ 95-101.)

Second, as discussed above, the SAC is devoid of allegations that Garner "took an active part in persuading" the vendors to breach any contracts they had with GFP, by, for example, offering better terms or incentives. *M-I LLC*, 733 F. Supp. 2d at 775. The SAC merely alleges that Garner "instructed" or "asked" certain vendors to invoice Garner directly, with no mention of incentives offered or how such a request induced any vendor to breach any contract with GFP. (SAC ¶¶ 95, 97, 112.) Further, as this Court noted in *North Cypress Medical Center Operating Co. Ltd. v. Gallagher Benefit Services, Inc.,* "One does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." No. 4:11-CV-00685, 2012 WL 438869, at *6 (S.D. Tex. Feb. 9, 2012) (quotations and citations omitted). Accordingly, GFP has not and cannot plead that Garner proximately caused any loss of any of GFP's vendor contracts. *M-I LLC*, 733 F. Supp. 2d at 775 ("Here, it is alleged . . . that [Defendants]

. . . are soliciting [Plaintiff's] customers . . . There are no facts suggesting that any Defendant has offered better terms or other incentives in order to induce companies to breach their contracts."); *BHL*, 2016 WL 8648927, at *9 ("[N]owhere does GSSI set forth facts that allege how BHL interfered with the existing GSSI–Statoil contract, or that it persuaded Statoil to breach the contract."). Thus, the claim fails for this additional reason.

### D. GFP Fails to Allege It Was Damaged as a Result of the Alleged Interference

GFP must also plead that it suffered "actual damage or loss" as a result of Garner's alleged interference. *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19 (citations omitted). As discussed above, the SAC vaguely asserts that Garner "caused injury" to GFP's relationships with vendors. (SAC ¶¶ 112-13, 121.) GFP does not allege a specific contract between GFP and any vendor that was the subject of Garner's alleged interference, or that Garner proximately caused the vendor to breach that contract. GFP's tortious interference claims thus "amount to nothing more than a formulaic recitation of the elements of these causes of action, which is insufficient to state a claim." *Priority Design & Serv., Inc.*, 2019 WL 2124677, at *5 (citations omitted). Finally, as also discussed above, GFP's tortious interference claims are duplicative of GFP's breach of contract claims and must be dismissed for this additional reason.

## IV. GFP FAILS TO STATE A CLAIM FOR FRAUD

GFP's fraud claim likewise fails to state a claim, is duplicative of GFP's breach of contract claims, and should be dismissed. To state a claim for fraud, a plaintiff must plead that: "(1) a material representation was made, (2) that the representation was false[ ] when [it] was made, (3) the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) that the speaker made the misrepresentation with the intent that the other party should act upon it, (5) the party acted in reliance on the misrepresentation, and (6) the party thereby suffered injury." *Farshchi v. Wells Fargo Bank, N.A.*, No. CV H-15-1692,

2016 WL 2858903, at *6 (S.D. Tex. May 13, 2016) (quotations and citations omitted). Further, fraud claims are subject to the heightened pleading requirements under Federal Rule of Civil Procedure 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Farshchi*, 2016 WL 2858903, at *6 (citing *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1033-34 (5th Cir. 2010)).

GFP's fraud claim fails to meet this standard because the SAC fails to allege plausibly that the speaker knew the representation was false or that it was made recklessly without any knowledge of the truth or that GFP suffered any injury as a result of the alleged misrepresentation. The claim is also impermissibly duplicative of GFP's breach of contract claims.

### A. GFP Fails to Plausibly Allege a Knowingly or Recklessly False Representation

To survive a motion to dismiss, GFP must allege with particularity that "the speaker knew [a material and false representation] was false or made it recklessly without any knowledge of the truth and as a positive assertion." *Farshchi*, 2016 WL 2858903, at *6 (quotations and citations omitted). Conclusory allegations are insufficient. *Curtis v. Cerner Corp.*, 621 B.R. 141, 170 (S.D. Tex. 2020).

Conclusory allegations of falsity are all that GFP offers. GFP claims that "in multiple telephone and email conversations between JP Temperilli and/or Lawrence Crowe on behalf of Garner and Don Pollard on behalf of GFP in February and March 2024, Garner represented to GFP that it required: (1) additional discounts of GFP's services for the sole benefit of the City; and (2) a listing of GFP's preferred pricing to determine certain available discounts on the projects, and those certain discounts on the projects were to be passed on as saving to the City of New York." (SAC ¶ 144). GFP then makes the conclusory allegation that these "representations to GFP were

false, and Garner knew the representations were false at the time that it made the representations." (*Id.* ¶ 145.) This conclusory statement does not plead with particularity how or why the statements were knowingly or recklessly false when made. *Curtis*, 621 B.R. 141, 170 ("Plaintiff makes no other allegations except for impermissibly conclusory allegations like '[w]hen [the speakers] made their material representations to Debtor, they knew their representations were false or made the representations recklessly, as a positive assertion, and without knowledge of those representations' truth,' which the Court will disregard."); *Sam v. Wells Fargo Bank*, N.A., No. 4:15-CV-03194, 2016 WL 4470111, at *11 (S.D. Tex. July 15, 2016) ("Plaintiff also fails to . . . provide any factual enhancement for his conclusory allegation that '[t]he misrepresentations were made with the knowledge of their falsity or made recklessly without any knowledge of their truth.'").

Thus, even accepting as true GFP's allegation that Garner represented that the requests for pricing and discounts were for the City's benefit, GFP fails to allege why the statements were knowingly or recklessly false when made. The fraud claim fails for this reason alone. *Curtis*, 621 B.R. 141, 170 ("Even accepting Plaintiff's allegation that Cerner misrepresented its ability to remediate Soarian, Plaintiff does not allege . . . why the statements were knowingly or recklessly false when made."); *Montalvo v. Specialized Loan Servicing LLC*, No. SA-21-CV-00964-JKP, 2022 WL 3031078, at *3-4 (W.D. Tex. July 30, 2022) ("[E]ven accepted as true, the allegation that SLS and U.S. Bank never intended to abide by the repayment terms and made a false representation of default with the intent that Montalvo act upon it does not support a fraud cause of action.").

### B. GFP's Fraud Claim Fails to Plausibly Allege Injury and is Duplicative

GFP also fails to allege with particularity how the alleged fraud caused injury to GFP. *See Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (affirming dismissal of statutory and common law fraud because of the plaintiff's failure to allege damages, and the extent

of damages, associated with the allegedly fraudulent transaction). GFP again alleges that "Garner ultimately used [the pricing information] to undermine GFP and cut it out of the Asylum Seeker Facilities. As a result, GFP has been damaged." (SAC ¶ 148). This conclusory statement insufficient to state a claim for fraud, as it does not demonstrate how GFP's relationships or contracts with any vendor was affected. *Farshchi*, 2016 WL 2858903, at *6 ("A conclusory recitation of the elements of a cause of action will not support a claim under Rule 12(b)(6).").

Second, "[t]he economic loss rule precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties . . . A claim in tort will not lie when the only injury alleged is for economic damages that are caused by the failure to perform a contract." *Id.* at *7 (quotations and citations omitted). "Where the plaintiff alleges no damages other than those economic damages suffered from breach of contract, some courts have barred claims for fraud." *Sam*, 2016 WL 4470111, at *12 (S.D. Tex. July 15, 2016).

GFP's fraud claim – like its tortious interference claims – is based on the allegation that GFP was injured by being cut out of the Facilities. (SAC ¶ 148.) However, as discussed above, the Agreements govern the GFP-Garner relationship. Thus, as with GFP's tortious interference claims, the fraud claim is impermissibly duplicative of GFP's breach of contract claims. *See Gonzales v. Bank of Am., N.A.,* No. CIV.A. G-12-292, 2013 WL 140093, at *2 (S.D. Tex. Jan. 10, 2013) ("Plaintiffs have not alleged any independent injury outside the economic losses caused by [Defendant's] alleged breach of the contract, therefore, they cannot maintain a claim for fraud."); *Daryani v. Wells Fargo Bank, N.A.,* 2012 WL 3527924, at *3 (S.D. Tex. Aug. 13, 2012) ("[C]omplaints by Plaintiff about Wells Fargo's misrepresentations, or their failure to provide information relating to the loan . . . relate to the parties' contractual relationship, and cannot, as a matter of law, form the basis of a fraud claim.") (citing *Heil Co. v. Polar Corp.,* 191 S.W.3d 805,

817 (Tex.App.—Fort Worth 2006, pet. denied) (holding that the economic loss rule barred a fraud claim)).

In short, GFP's fraud claim should be dismissed because: (1) the SAC fails to plausibly allege that the representations were made knowingly or recklessly falsely; (2) the SAC fails to plausibly allege injury; and (3) the subject matter of the fraud claim is covered by the Agreements.

## CONCLUSION

For the foregoing reasons, GFP's claims for tortious interference (Counts I and II) and fraud (Count V) should be dismissed, and the Court should award Garner such other and further relief as the Court deems just and proper.

Dated: Dallas, Texas
January 31, 2025

**McDermott Will & Emery LLP**

/s/ *David Genender*
David Genender
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295 8000

Jordan Kazlow
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
(713) 653-1700

Andrew B. Kratenstein (admitted *pro hac vice*)
Alexandra Nasar (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
(212) 547-5400

*Attorneys for Garner Environmental Services, Inc.*