**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| GFP ENTERPRISES LLC *a.k.a* GFP RESPONSE LLC,<br><br>*Plaintiff*,<br>v.<br><br>GARNER ENVIRONMENTAL SERVICES, INC.,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:24-cv-04517 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GARNER ENVIRONMENTAL SERVICES, INC.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**MCDERMOTT WILL & EMERY LLP**

David Genender
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295 8000

Jordan Kazlow
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
(713) 653-1700

Andrew B. Kratenstein (admitted *pro hac vice*)
Alexandra Nasar (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
(212) 547-5400

**TABLE OF CONTENTS**

ARGUMENT ........................................................................................................ 1

I. THE COURT MAY CONSIDER DOCUMENTS INCORPORATED IN THE SAC ........................................................................................................ 1

II. GFP HAS NO CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS ........................................................ 2

III. GFP HAS NO CLAIM FOR TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS ........................................................................ 5

IV. GFP HAS NO FRAUD CLAIM ........................................................................ 8

V. GFP'S TORT CLAIMS ARE BARRED BY THE ECONOMIC LOSS RULE ........................................................................................................ 9

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A-*Delta Overnight Legal Reprod. Servs. Corp. v. David W. Elrod, PLLC*,
No. 05-11-00708-CV, 2012 WL 5351265 (Tex. App. Oct. 31, 2012) ....................................10

*Amigo Broad., LP v. Spanish Broad. Sys., Inc.*,
521 F.3d 472 (5th Cir. 2008) ....................................................................................6

*In re ATP Oil & Gas Corp.*,
517 B.R. 756 (Bankr. S.D. Tex. 2014) ....................................................................10

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
No. 4:15-CV-00627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016) ..............................4, 8

*CHRISTUS Health v. AMISYS, LLC*,
No. CIV.A.H-05-1045, 2005 WL 2388258 (S.D. Tex. Sept. 26, 2005) ................................1

*DT Apartment Grp., LP v. CWCapital, LLC*,
No. 3:12-CV-0437-D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012)...................................3

*Farshchi v. Wells Fargo Bank, N.A.*,
No. CV H-15-1692, 2016 WL 2858903, at *6 (S.D. Tex. May 13, 2016)..........................9, 10

*Gibson Brands Inc. v. Armadillo Distrib. Enters., Inc.*,
No. 4:19-CV-00358, 2020 WL 3453164 (E.D. Tex. June 24, 2020) ...............................5, 6

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
No. CIV.A. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015).........................3, 4, 6

*Kadco Cont. v. Dow Chem. Co.*,
198 F.3d 241 (5th Cir. 1999) ....................................................................................7

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) ....................................................................................1

*M-I LLC v. Stelly*,
733 F. Supp. 2d 759 (S.D. Tex. 2010) ............................................................... *passim*

*Nickel Bridge Cap., LLC v. Hendrickson*,
No. 4:23-CV-1047, 2024 WL 1769336 (S.D. Tex. Apr. 22, 2024).......................................10

*N. Cypress Med. Ctr. Operating Co. Ltd. v. Gallagher Benefit Servs., Inc.*,
No. 4:11-CV-00685, 2012 WL 438869 (S.D. Tex. Feb. 9, 2012) ...........................................8

*Oppenheimer v. Prudential Sec. Inc.*,
94 F.3d 189 (5th Cir. 1996) ....................9

*PrevMED, Inc. v. MNM-1997, Inc.*,
No. CV H-15-2856, 2017 WL 785656 (S.D. Tex. Feb. 28, 2017) ....................7

*PrinterOn Inc. v. BreezyPrint Corp.*,
93 F. Supp. 3d 658 (S.D. Tex. 2015) ....................7

*Priority Design & Serv., Inc. v. Plaza*,
No. SA-19-CV-00058-OLG, 2019 WL 2124677 (W.D. Tex. May 15, 2019) ....................5

*Savancys Inc. v. Trendset IT Inc.*,
No. 3:24-CV-0139-S, 2024 WL 4448672 (N.D. Tex. Oct. 8, 2024) ....................7, 8

*Scanlan v. Tex. A&M Univ.*,
343 F.3d 533 (5th Cir. 2003) ....................1, 2

*Specialties of Mexico Inc. v. Masterfoods USA*,
No. CIV.A. L-09-88, 2010 WL 2488031 (S.D. Tex. June 14, 2010) ....................3

*Staton Holdings, Inc. v. Russell Athletic, Inc.*,
No. 3:09-CV-0419-D, 2009 WL 4016117, at *3 (N.D. Tex. Nov. 20, 2009) ....................10

*Sterner v. Marathon Oil Co.*,
767 S.W.2d 686 (Tex. 1989)....................7

*Sullivan v. Leor Energy, LLC*,
600 F.3d 542 (5th Cir. 2010) ....................9

*Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*,
No. 3:18-CV-0587-N, 2021 WL 9145415 (N.D. Tex. Mar. 24, 2021)....................8

*Total Quality Logistics, LLC v. Medellin*,
No. SA-23-CV-00333-XR, 2023 WL 7289396 (W.D. Tex. Nov. 2, 2023) ....................3

*Wolf v. Cowgirl Tuff Co.*,
No. 1:15-CV-1195 RP, 2016 WL 4597638 (W.D. Tex. Sept. 2, 2016)....................2, 4, 6

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................9

## PRELIMINARY STATEMENT

At the start of its Opposition to Garner's Motion to Dismiss ("Opp'n"), GFP desperately urges the Court not to consider documents that it incorporated in the SAC that are clearly central to its claims. The reason is obvious – the documents defeat GFP's claims. Indeed, GFP's opposition reveals that (i) the SAC fails to allege a tort and (ii) the tort claims are barred by the economic loss rule and are an impermissible attempt to circumvent the Master Agreement's bar on consequential damages.

## ARGUMENT

### I. THE COURT MAY CONSIDER DOCUMENTS INCORPORATED IN THE SAC

There is no dispute that this Court may consider documents that are "referred to in the plaintiff's complaint and are central to [its] claim." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). GFP seeks to strike the Riddle Declaration and Exhibits D-H, arguing that these exhibits are not "central" to their claims. (Opp'n at 6-8.) However, Exhibits D, E, and F[1] are cited in the SAC and are plainly central to GFP's tort claims. GFP's tort claims rest on allegations that: (1) Garner requested GFP's pricing information (Exhibit D); (2) GFP provided it (Exhibit E); and (3) Garner terminated (i.e., "cut out") GFP from the Facilities (Exhibit F). (SAC ¶¶ 50-52, 55, 58, 60, 73, 95, 97, 99, 101, 103, 112-13, 148.) These exhibits are thus "central" to GFP's tort claims. *CHRISTUS Health v. AMISYS, LLC*, No. CIV.A.H-05-1045, 2005 WL 2388258, at *1 (S.D. Tex. Sept. 26, 2005) (attaching the parties' contract and a written communication did not convert motion to summary judgment).[2]

---

[1] Garner's Offer of Judgment (Exhibit H) provides context regarding the "nature and stage of the proceeding" pursuant to this Court's Procedure 6(A)(3).

[2] GFP relies on *Scanlan v. Tex. A&M University*, 343 F.3d 533 (5th Cir. 2003), which is inapposite. There, the court disregarded a "defendant-created" report because it: (1) was not attached to the motion to dismiss; (2) referenced numerous other documents that were not referenced by plaintiffs;

## II. GFP HAS NO CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS

As Garner argued in its opening brief, the SAC fails to allege: (1) a reasonable probability of GFP entering specific relationships or transactions; (2) Garner's knowledge of such relationships; (3) intentional or malicious interference; (4) independently tortious conduct; (5) proximate cause; and (6) actual harm suffered. (ECF No. 75 at 8-14.)

*First*, GFP asserts that it has adequately plead "preexisting" business relationships, relying on *Wolf v. Cowgirl Tuff Co.*, in which the court found sufficient detail regarding the plaintiff's relationship with a specific sponsor, but rejected vague allegations about "other sponsors." No. 1:15-CV-1195 RP, 2016 WL 4597638, at *6 (W.D. Tex. Sept. 2, 2016). By contrast, the SAC contains *no* factual allegations regarding 14 vendors, listing them only once in a conclusory statement that "GFP had business relationships with: [listing 21 vendors]." (SAC ¶ 109.)[3] Five other vendors (Lantier, AAA Mobile Solutions, Main Attractions, Select Event Group, and Granny's Alliance Holdings) are mentioned again, but also in conclusory terms. (SAC ¶¶ 95, 97-99, 103.) GFP also undermines any claim that GFP would have done more business with iRent Everything and Rentals to Go, alleging that they "conspired [with Garner] . . . to cut GFP out of the Asylum Seeker Facilities entirely." (SAC ¶ 73.) Thus, this case is more akin to *M-I LLC v. Stelly*, in which this Court rejected conclusory allegations of business relationships as inadequate. 733 F. Supp. 2d 759, 776 (S.D. Tex. 2010).

*Second*, GFP concedes that independently tortious conduct requires alleging that the "defendant's conduct would be actionable under a recognized tort." (Opp'n at 11)

---

(3) was not central to plaintiffs' claims; and (4) other documents on the website referenced by defendants were not mentioned in the complaint. *Scanlan*, 343 F.3d at 537.

[3] GFP claims that it alleges to have relationships with 22 vendors. (Opp'n at 10, n.2.) However, GFP listed iRent Everything twice. (SAC ¶ 109.)

(citing *Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. CIV.A. 4:14-0941, 2015 WL 034254 at *19 (S.D. Tex. Mar. 10, 2015), and *Total Quality Logistics, LLC v. Medellin*, No. SA-23-CV-00333-XR, 2023 WL 7289396, at *8 (W.D. Tex. Nov. 2, 2023)). In *Greater Houston*, the court held that the "[p]laintiffs have not pleaded independently tortious conduct" because alleged violations of local ordinances "are not actionable." 2015 WL 1034254 at *19. In *Total Quality*, the court found independently tortious conduct based on misappropriation of trade secrets – an allegation GFP does not and cannot make.

Instead, GFP alleges that Garner misrepresented its need for day-to-day relationships with subcontractors and for GFP's pricing information to pass savings to the City. (Opp'n at 11.) But even if that were true (it is not), mere misrepresentations, without more, are not actionable. GFP fails to explain how Garner's actions "rise[] above the level of 'sharp or unfair' conduct, and amounts to an independently actionable tort." *Specialties of Mexico Inc. v. Masterfoods USA,* No. CIV.A. L-09-88, 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010) (citations omitted).

Indeed, there is nothing improper about Garner's request for pricing, which the e-mails cited in the SAC show concerned GFP's pricing to Garner – not vendors' pricing to GFP. (SAC ¶¶ 50-51, 55; Riddle Decl. Exs. D-E.) The SAC also does not allege that GFP told Garner that the pricing information was confidential or took any steps to protect it and, in any event, "Texas does not recognize a claim for misuse of confidential information that is not either secret or, at least substantially secret." *DT Apartment Grp., LP v. CWCapital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at *12 (N.D. Tex. Dec. 26, 2012).

*Third,* GFP fails to demonstrate that Garner "had actual knowledge of the prospective business relations" or that any interference was more than "incidental." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19. GFP alleges that "Garner was aware of GFP's probability of

entering into and continuing business relationships with the GFP Vendors as demonstrated by the 30-day minimum guarantee performance periods GFP entered into with its vendors" (SAC ¶ 110), but does not allege that Garner knew of these vendor performance periods – only that Garner and GFP had its own (admittedly disputed) performance periods. (SAC ¶¶ 46, 87.) This allegation is insufficient. *See BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-CV-00627, 2016 WL 8648927, at *11 (S.D. Tex. Mar. 29, 2016) (dismissing counterclaim for lack of "any factual allegation that [Plaintiff] had actual knowledge of a prospective business relation and its desire to interfere in that relation was its primary purpose in doing so."); *Greater Houston Transp.*, 2015 WL 1034254, at *18 ("Knowledge of Plaintiffs' business and of the existence of individual drivers does not demonstrate knowledge of individual contracts.").

*Fourth*, GFP ignores that "interference is not improper if the defendant had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose." *BHL Boresight, Inc.*, 2016 WL 8648927, at *11 (internal quotations and citations omitted). The SAC contradicts any claim that Garner's actions were intended to harm GFP or interfere with its relationships, as it alleges (albeit falsely) that "Garner was keeping most, if not all, GFP's profits for its own benefit." (SAC ¶ 53.)

*Fifth*, GFP fails to plead proximate cause as the SAC is devoid of allegations that Garner persuaded a vendor not to transact with GFP, such as by "offering better terms or other incentives." *M-I LLC*, 733 F. Supp. 2d at 775. GFP's reliance on *Wolf* is misplaced. There, the defendant actively interfered by sending cease-and-desist letters to the plaintiffs regarding alleged copyright violations and "encouraged [the plaintiffs' client] to cease [its] collaboration with Plaintiffs." *Wolf*, 2016 WL 4597638, at *2. By contrast, the SAC merely alleges that Garner "negotiated deals," "contacted," and "ultimately entered into" contracts with the vendors. (SAC ¶¶ 4, 99-101.)

At most, GFP alleges that Garner offered vendors work, which is not wrongful. *See M-I LLC,* 733 F. Supp. 2d at 775 (no interference without offering better terms or other incentives).

*Sixth* and finally, GFP's bald assertion that Garner's conduct "negated GFP's prospective business relations" (Opp'n at 13) fails to identify a specific relationship that was harmed. GFP's allegations are thus merely "a formulaic recitation of the elements." *Priority Design & Serv., Inc.*, *v. Plaza*, No. SA-19-CV-00058-OLG, 2019 WL 2124677, at *5 (W.D. Tex. May 15, 2019).

## III. GFP HAS NO CLAIM FOR TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS

GFP likewise fails to salvage its claim for tortious interference with existing contracts. As GFP concedes, it must plead: "(1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that proximately causes damage, and (4) actual damage or loss." (Opp'n at 13 ) (citing *M-I LLC*, 733 F. Supp. 2d at 775). The SAC fails to allege any specific contracts subject to interference, how Garner knew of such contracts, what contracts, if any, were breached due to the alleged interference, and any actual harm suffered as a result.

*First,* the SAC fails to identify specific contracts GFP had with each vendor or how Garner interfered with them. GFP's reliance on *Gibson Brands Inc. v. Armadillo Distrib. Enters., Inc.* is misplaced. The pleading in that case identified specific contracts with four retailers and alleged exactly how each retailer ceased or altered its business dealings after the plaintiff demanded they stop dealing with the defendant. No. 4:19-CV-00358, 2020 WL 3453164, at *3-4 (E.D. Tex. June 24, 2020). As this Court held in *M-I LLC*, merely alleging a plaintiff "had valid contracts with certain customers . . . fails entirely to allege or designate a *specific contract* that is the subject of interference." 733 F. Supp. 2d at 774 (emphasis added).[4]

[4] The SAC is also unclear as to whether GFP has contracts with all 21 vendors or if some were merely business relationships. If GFP has existing contracts with all 21 vendors, it is unclear why it also asserts a claim for tortious interference with prospective business relations. *Gibson Brands*

*Second,* to establish intent, defendant must "have actual knowledge of the contract, or knowledge of facts and circumstances that would lead a reasonable person to believe there was a contract." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *18 (citations omitted). It is not enough that Garner knew generally that "GFP contracted with numerous vendors for goods and services on the projects." (Opp'n at 16.) GFP must plausibly allege that Garner knew or had reason to believe GFP had specific contracts with each of the 21 vendors at issue. Alleging general knowledge of the "nature of [the plaintiff's] business relations" rather than "individual contracts" is insufficient. *Greater Houston Transp. Co.*, 2015 WL 1034254, at *18.

The cases on which GFP relies are again inapposite. In *Amigo Broad., LP v. Spanish Broad. Sys., Inc.*, there was evidence that third parties informed the defendant they were under contract with the plaintiff and that the defendant had reason to believe those contracts lasted five years. 521 F.3d 472, 491 (5th Cir. 2008). In *Wolf*, the plaintiffs alleged "outstanding contracts" with their client (Equibrand) at the time of interference, that they were contractually obligated to seek Equibrand's permission before providing any images to the defendant, and that the contracts with Equibrand provided plaintiffs access as official photographers to certain events involving defendants. 2016 WL 4597638, at *3. The plaintiffs further alleged that Equibrand sent a written termination notice of all current and pending projects with the plaintiffs. *Id.*

Here, GFP alleges Garner knew GFP worked with vendors at the Facilities but does not – because GFP cannot – allege Garner was privy to any of those contracts. GFP misconstrues its own pleading in stating that "Garner obviously demanded the pricing information on GFP's contracts with its vendors because Garner knew GFP had contracts with its vendors."

---

holds that alleging interference with "some" customers without identifying specific contracts or breaches is insufficient. 2020 WL 3453164, at *3.

(Opp'n at 16.) As the documents incorporated in the SAC demonstrate, Garner requested a breakdown of costs *between GFP and Garner*, which was broken down by subject matter, not vendor. (SAC ¶¶ 50, 55; Riddle Decl. Exs. D, E.)

*Third,* to plead proximate cause, a plaintiff "must allege that the defendant took an active part in persuading a party to a contract to breach it." *M-I LLC*, 733 F. Supp. 2d at 775 (quotations and citations omitted). GFP admits that it fails to allege that any vendor *breached* a contract with GFP, but relies on *Sterner v. Marathon Oil Co*., 767 S.W.2d 686, 689 (Tex. 1989), to contend that a breach is not required. However, *Sterner* is not good law. *PrinterOn Inc. v. BreezyPrint Corp.*, 93 F. Supp. 3d 658, 707 (S.D. Tex. 2015) (finding that in *Sterner,* the court determined that "the terminable-at-will status of a contract is no defense to an action for tortious interference with its performance . . . But more recent Texas Supreme Court authority has held otherwise."). Texas courts have limited *Sterner*'s holding "to cases involving interference alleged either to have been defamatory or to have breached an independent contract obligation." *PrevMED, Inc. v. MNM-1997, Inc.*, No. CV H-15-2856, 2017 WL 785656, at *10 (S.D. Tex. Feb. 28, 2017). Thus, Garner "could not have interfered with the [third parties'] continued employment by merely hiring them." *PrevMED*, 2017 WL 785656, at *10; *PrinterOn Inc.,* 93 F. Supp. 3d at 707 ("[M]erely inducing a contract obligor to do what it has a right to do is not actionable interference."). The Fifth Circuit has likewise held that "mere economic inducement to exercise rights under a contract (i.e., by offering superior employment) does not constitute tortious interference of contract." *Kadco Cont. v. Dow Chem. Co.*, 198 F.3d 241 at *3 (5th Cir. 1999).

GFP alleges that Garner "cut out" GFP by contracting directly with vendors but does not allege that any vendor breached a contract with GFP in order to work with Garner. (SAC ¶¶ 95-101.) This omission is fatal. *Savancys Inc. v. Trendset IT Inc.*, No. 3:24-CV-0139-S,

2024 WL 4448672, at *2 (N.D. Tex. Oct. 8, 2024) ("Plaintiff must allege 'that some obligatory provision of a contract [was] breached.'") (citations omitted); *Super-Sparkly Safety Stuff, LLC v. Skyline USA, Inc.*, No. 3:18-CV-0587-N, 2021 WL 9145415, at *2 (N.D. Tex. Mar. 24, 2021) ("[T]ortious interference with an existing contract requires that an actual breach occurred.") (citations omitted).

GFP also fails to refute that "[m]erely entering into a contract with a party with the knowledge of that party's contractual obligations to someone else is not the same as inducing a breach." *M-I LLC*, 733 F. Supp. 2d at 775 (quotations and citations omitted). The SAC does not allege that Garner actively persuaded vendors to breach contracts with GFP – it merely alleges that Garner "instructed" or "asked" certain vendors to invoice Garner directly, without alleging incentives or how this request induced a breach. (SAC ¶¶ 95, 97, 112.) As this Court noted in *N. Cypress Med. Ctr. Operating Co. Ltd. v. Gallagher Benefit Services, Inc.*, "[o]ne does not induce another to commit a breach of contract with a third person . . .when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." No. 4:11-CV-00685, 2012 WL 438869, at *6 (S.D. Tex. Feb. 9, 2012) (quotations and citations omitted); *see also BHL*, 2016 WL 8648927, at *9 ("[N]owhere does GSSI set forth facts that allege how BHL interfered with the existing [] contract, or that it persuaded Statoil to breach the contract.").

*Fourth* and finally, as to actual harm, GFP merely incorporates its argument as to tortious interference with prospective business relations. As discussed above, that argument fails.

## IV. GFP HAS NO FRAUD CLAIM

GFP cannot salvage its fraud claim as the SAC does not meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard because it lacks plausible allegations that Garner knew a representation was false or that it was made recklessly or that GFP suffered resulting injury.

*First*, to survive dismissal, GFP must allege that "the speaker knew [a material and false representation] was false or made it recklessly." *Farshchi v. Wells Fargo Bank, N.A.,* No. CV H-15-1692, 2016 WL 2858903, at *6 (S.D. Tex. May 13, 2016) (quotations and citations omitted). GFP's claim that Garner's "representations to GFP were false, and Garner knew the representations were false at the time that it made [them]" (SAC ¶ 145) is insufficient. *Curis* 621 B.R. at 170 ("Plaintiff makes no other allegations except for impermissibly conclusory allegations like '[w]hen [the speakers] made their material representations . . . they knew their representations were false or made the representations recklessly, as a positive assertion, and without knowledge of those representations' truth,' which the Court will disregard."). GFP relies on *Sullivan v. Leor Energy, LLC,* which undermines GFP's claim as the court dismissed a fraud claim where the plaintiff failed to specify who made the statements, when, or where. 600 F.3d 542, 551 (5th Cir. 2010). GFP likewise provides no facts supporting its claim that no savings were passed to the City or that Garner knew as much.

*Second*, GFP's conclusory claim that Garner used pricing information to "undermine GFP and cut it out of the [] Facilities," and that "GFP has been damaged" as a result (SAC ¶ 148) is insufficient, as it does not demonstrate GFP's relationships or contracts with any vendor was impacted. *Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (affirming dismissal for failure to allege damages, and the extent of damages, associated with the allegedly fraudulent transaction).

## V. GFP'S TORT CLAIMS ARE BARRED BY THE ECONOMIC LOSS RULE

For a tort claim to survive, there must be a legal duty independent of the contract that has been violated. *Staton Holdings, Inc. v. Russell Athletic, Inc.*, No. 3:09-CV-0419-D, 2009 WL 4016117, at *3 (N.D. Tex. Nov. 20, 2009). "[W]here an act gives rise to liability only because it breaches the parties' contract, the plaintiff's claim sounds only in contract." *Id.* (citations omitted);

*Farshchi*, 2016 WL 2858903 at *7 (economic loss rule bars tort claims when the alleged injury is "caused by the failure to perform a contract."). The Agreements govern the entire subject matter of the parties' relationship concerning the Facilities and contain a broad merger clause. (SAC ¶¶ 20-22, 79; Riddle Decl. Ex. A § 18.1.) Garner's termination of GFP falls squarely within the Agreements' scope, which expressly allows Garner to terminate GFP at any time. (Riddle Decl. Ex. A § 15.1.) GFP's claim that it could not be "cut out" of the Facilities is thus defeated by the MSA itself.

GFP cannot avoid dismissal by relying on *Nickel Bridge Cap., LLC v. Hendrickson*, in which the court held that the economic loss rule does not apply to fraudulent inducement of a contract. No. 4:23-CV-1047, 2024 WL 1769336, at *8 (S.D. Tex. Apr. 22, 2024). The SAC does not allege fraudulent inducement. Instead, GFP asserts that Garner committed fraud by requesting pricing information that GFP did not designate as confidential or otherwise seek to protect.

GFP's tort claims are also a transparent attempt to circumvent the damages limitation in the MSA, which specifically precludes recovery of consequential damages, such as lost profits. (Riddle Decl. Ex. A § 15.2.) Lost profits resulting from the loss of other contracts or relationships, as opposed to lost profits resulting directly from the breached contracts, are consequential. *See In re ATP Oil & Gas Corp.*, 517 B.R. 756, 763 (Bankr. S.D. Tex. 2014); A-*Delta Overnight Legal Reprod. Servs. Corp. v. David W. Elrod, PLLC*, No. 05-11-00708-CV, 2012 WL 5351265, at *3 (Tex. App. Oct. 31, 2012). GFP's claims for loss of "anticipated profits" from working with the vendors at the Facilities are consequential and thus precluded under the MSA.

## CONCLUSION

For the foregoing reasons and those in Garner's opening brief, GFP's claims for tortious interference (Counts I and II) and fraud (Count V) should be dismissed with prejudice.

Dated: March 14, 2025

**McDERMOTT WILL & EMERY LLP**

/s/ *David Genender*

David Genender
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295 8000

Jordan Kazlow
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
(713) 653-1700

Andrew B. Kratenstein (admitted *pro hac vice*)
Alexandra Nasar (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
(212) 547-5400

*Attorneys for Garner Environmental Services, Inc.*