**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| GFP ENTERPRISES LLC *a.k.a* GFP RESPONSE LLC,<br><br>*Plaintiff*,<br>v.<br><br>GARNER ENVIRONMENTAL SERVICES, INC.,<br><br>*Defendant*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 4:24-cv-04517 |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT GARNER ENVIRONMENTAL SERVICES, INC.'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT

**MCDERMOTT WILL & EMERY LLP**

David Genender
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295 8000

Jordan Kazlow
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
(713) 653-1700

Andrew B. Kratenstein (admitted *pro hac vice*)
Alexandra Nasar (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
(212) 547-5400

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....... 1

STATEMENT OF FACTS ....... 2

I. THE MASTER SERVICES AGREEMENT AND PURCHASE ORDERS ....... 2

II. GARNER'S REQUEST FOR PRICING INFORMATION ....... 4

III. THE TRANSITION AGREEMENT AND TERMINATION OF GFP'S SERVICES ....... 5

IV. GFP SUES GARNER ....... 6

V. GFP's TORT CLAIMS ARE DISMISSED AND GFP FILES THE TAC ....... 7

ARGUMENT ....... 8

I. GFP MUST STATE A PLAUSIBLE CLAIM TO SURVIVE DISMISSAL ....... 8

II. GFP FAILS TO STATE A FRAUD CLAIM (COUNT I) ....... 9

A. GFP's Fraud Claim Based on Discounts Allegedly Requested by Garner Fails ....... 10

i. GFP Does Not Plead a Misrepresentation with the Required Specificity ....... 10

ii. GFP Fails to Sufficiently Plead that the Representation Was Material ....... 10

iii. The Fraud Claim Fails to Sufficiently Plead Justifiable Reliance ....... 11

iv. GFP Fails to Plausibly Allege a Knowing or Reckless False Statement ....... 12

B. GFP's Fraud Claim Based on GFP's Pricing Information Likewise Fails ....... 13

i. GFP Fails to Plausibly Allege a Knowing or Reckless False Statement ....... 13

ii. The Agreements Defeat Justifiable Reliance ....... 13

iii. GFP Fails to Sufficiently Plead Causation ....... 15

C. GFP's Fraud Claim Fails to Plausibly Allege Injury ....16

III. GFP FAILS TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT (COUNT V) ....17

A. GFP's Fraudulent Inducement Claim Lacks the Requisite Specificity ....18

B. GFP Fails to Sufficiently Plead That It Was Induced to Enter a Contract ....18

IV. GFP FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS (COUNT II) ....19

A. GFP Does Not Plausibly Plead a Reasonable Probability of Entering Business Relationships With the Vendors Concerning the Facilities ....20

B. GFP Does Not Plausibly Plead Intentional and Malicious Interference ....21

C. GFP Fails to Allege That Garner's Actions Were Independently Tortious ....22

D. GFP Fails to Allege that Garner's Interference Proximately Caused Injury ....23

E. GFP Fails to Allege Damage or Loss as a Result of the Alleged Interference ....24

CONCLUSION ....25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-Delta Overnight Legal Reprod. Servs. Corp. v. David W. Elrod, PLLC*,
No. 05-11-00708-CV, 2012 WL 5351265 (Tex. App. Oct. 31, 2012) ....................................25

*Armstrong v. Am. Home Shield Corp.*,
333 F.3d 566 (5th Cir. 2003)....................................................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................8

*In re ATP Oil & Gas Corp.*,
517 B.R. 756 (Bankr. S.D. Tex. 2014) .....................................................................................25

*Bergholtz v. Sw. Bell Yellow Pages, Inc.*,
324 S.W.3d 195 (Tex. App. 2010)............................................................................................17

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
No. 4:15-CV-00627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016) .....................................21

*Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*,
472 S.W.3d 744 (Tex. App. 2015)............................................................................................24

*Brown v. Wilson Cnty.*,
No. SA-97-CA-1473-OG, 1999 WL 33290666 (W.D. Tex. Mar. 31, 1999) ..........................21

*CHRISTUS Health v. AMISYS, LLC*,
No. CIV.A.H-05-1045, 2005 WL 2388258 (S.D. Tex. Sept. 26, 2005)....................................9

*Collins v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ......................................................................................................9

*Curtis v. Cerner Corp.*,
621 B.R. 141 (S.D. Tex. 2020) .................................................................................................12

*DT Apartment Grp., LP v. CWCapital, LLC*,
No. 3:12-CV-0437-D, 2012 WL 6693192 (N.D. Tex. Dec. 26, 2012)...................................23

*Emerald Aerospace, LLC v. Boeing Co.*,
No. 3:22-CV-0717-B, 2022 WL 16701941 (N.D. Tex Nov. 3, 2022)....................................11

*Farshchi v. Wells Fargo Bank, N.A.*,
No. CV H-15-1692, 2016 WL 2858903 (S.D. Tex. May 13, 2016).............................9, 10, 12

*Fast Cap. Mktg., LLC v. Fast Cap. LLC*,
No. CIV. A. H-08-2142, 2008 WL 5381309 (S.D. Tex. Dec. 24, 2008)................................23

*Geolink Ltd. (U.K.) v. Mahmood*,
No. 4:21-CV-803, 2022 WL 2124519 (S.D. Tex. Mar. 18, 2022) .............................19, 20, 24

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
No. CIV.A. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015)
..........................................................................................................19, 20, 21, 22

*Grp. One Dev., Inc. v. Bank of Lake Mills*,
*No*. CV H-17-0375, 2017 WL 2937709 (S.D. Tex. July 7, 2017)..........................................13

*Haase v. Glazner*,
62 S.W.3d 795 (Tex. 2001).......................................................................................18

*Hernandez v. Ciba-Geigy Corp. USA*,
200 F.R.D. 285 (S.D. Tex. 2001).................................................................................16

*In re Katrina Canal Breaches Litig.*,
495 F.3d 191 (5th Cir. 2007) .........................................................................................8

*Keane v. Fox Television Stations, Inc.*,
297 F. Supp. 2d 921 (S.D. Tex. 2004), *aff'd,* 129 F. App'x 874 (5th Cir. 2005) ......................3

*Livingston v. Shaffer*,
No. 02-22-00151-CV, 2023 WL 1860001 (Tex. App. Feb. 9, 2023) .....................................11

*M-I LLC v. Stelly*,
733 F. Supp. 2d 759 (S.D. Tex. 2010) .........................................................................24

*Marathon Oil Co. v. Koch Energy Servs., LLC*,
No. CV H-21-1262, 2025 WL 950085 (S.D. Tex. Mar. 28, 2025).........................................17

*In re Margaux Warren Park Partners, Ltd.*,
No. 08-43388, 2009 WL 5061806 (Bankr. E.D. Tex. Dec. 15, 2009)....................................15

*Montalvo v. Specialized Loan Servicing LLC*,
No. SA-21-CV-00964-JKP, 2022 WL 3031078 (W.D. Tex. July 30, 2022)..........................12

*Montoya v. FedEx Ground Package Sys., Inc.*,
614 F.3d 145 (5th Cir. 2010) .........................................................................................8

*Murphree v. Godshall*,
No. CIV.A. H-13-0453, 2014 WL 4782936 (S.D. Tex. Sept. 24, 2014)..........................17, 19

*Mut. of Omaha Bank v. Mayer*,
No. 4:15-CV-01598, 2016 WL 3654652 (S.D. Tex. July 7, 2016) ........................................13

*Oppenheimer v. Prudential Sec. Inc.*,
94 F.3d 189 (5th Cir. 1996) ....................17

*Owens v. BAC Home Loans Servicing, L.P.*,
No. CIV.A. H-11-2742, 2012 WL 1494231 (S.D. Tex. Apr. 27, 2012) ....................12

*Priority Design & Serv., Inc. v. Plaza*,
No. SA-19-CV-00058-OLG, 2019 WL 2124677 (W.D. Tex. May 15, 2019) ....................24, 25

*Richter v. Carnival Corp.*,
No. 3:18-CV-2172-N, 2020 WL 1876098 (N.D. Tex. Apr. 15, 2020), *aff'd*,
837 F. App'x 260 (5th Cir. 2020) ....................23

*Setliff v. Zoccam Techs., Inc.*,
No. 3:21-CV-2025-B, 2022 WL 4240893 (N.D. Tex. Sept. 13, 2022) ....................15

*Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*,
607 F.3d 1029 (5th Cir. 2010) ....................10, 11

*In re Shelton*,
No. 13-70583, 2014 WL 1576864 (Bankr. S.D. Tex. Apr. 18, 2014) ....................18

*Specialties of Mexico Inc. v. Masterfoods USA*,
No. CIV.A. L-09-88, 2010 WL 2488031 (S.D. Tex. June 14, 2010) ....................22, 23

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................9

Fed. R. Civ. P. 12(b)(6) ....................8, 9

## PRELIMINARY STATEMENT

Despite multiple opportunities, Plaintiff GFP Enterprises LLC a.k.a. GFP Response LLC ("GFP") still fails to state a valid tortious interference or fraud claim against Defendant Garner Environmental Services, Inc. ("Garner") concerning the Floyd Bennett Field and Randall's Island Asylum Seeker Facilities (the "Facilities"). GFP originally sued Garner in New York for tactical reasons and improperly alleged a tortious conspiracy amongst Garner, two "vendors," and the City of New York (the "City"). After the New York court deconstructed those claims, GFP voluntarily dismissed the other defendants and moved to transfer the case to this Court. GFP then amended its complaint a second time, again reaching to plead tortious interference and fraud claims. This Court dismissed those claims but gave GFP a final chance to replead.

In its Third Amended Complaint ("TAC"), GFP moves its fraud claim up (to Count I) and adds a claim for fraudulent inducement (Count V). As to its tortious interference claims, GFP jettisoned its claim for tortious interference with existing contracts and, as to its claim for interference with prospective business relations claim (Count II), GFP reduced the number of vendors it claims Garner allegedly interfered with from twenty-one to nine. (TAC ¶ 39.)[1]

GFP's fraud, fraudulent inducement, and tortious interference claims (Counts I, II, and V) as re-plead fail to state a viable claim. They impermissibly seek to renegotiate the parties' agreements concerning the Facilities and transform what should be a simple breach of contract case into a non-existent tortious conspiracy.

[1] The nine vendors named in the TAC are: AAA Mobile Solutions; Granny's Alliance; Hightowers Petroleum Company; Lantier Tent Structures; Main Attractions; Select Event Group; Sunbelt Rentals; Rentals to Go; and iRent Everything (the "Vendors").

## STATEMENT OF FACTS

### I. THE MASTER SERVICES AGREEMENT AND PURCHASE ORDERS

In response to an emergency migrant housing crisis, the City contracted with Garner to provide environmental response services at the Facilities. (TAC ¶¶ 18 - 20.) Garner sub-contracted certain services to GFP pursuant to the Master Services Agreement (the Subcontract Agreement For Environmental Response Services) ("MSA"), dated August 22, 2022. (TAC ¶ 19; Declaration of Daniel Maldonado, Jr. dated May 1, 2025 ("Maldonado Decl.") Ex. A.) The MSA states that it, along with associated purchase orders (the "Purchase Orders"), represents "the entire agreement between [Garner] and [GFP] with respect to the identified project, services and Work and/or Client specified." (Maldonado Decl. Ex. A § 18.1.) The "identified project" includes GFP's services at the Facilities. (TAC ¶¶ 19-20.)

The MSA's forum selection and choice-of-law clause (Section 16.2) states that the agreement "is being performed in Harris County, Texas," and shall be "interpreted and enforced pursuant to the laws of the State of Texas." (Maldonado Decl. Ex. A § 16.2.) The MSA requires that any suit "in connection [ ]with" the MSA be brought in "Harris County, Texas." (*Id.*)

Section 14 of the MSA pertains to "Confidential Information." All confidentiality obligations concern "[i]nformation obtained by Subcontractor" [i.e., GFP] and thus run *from GFP to Garner*. By contrast, the MSA imposes no confidentiality obligation on Garner. (*Id*. § 14.)

In addition, the MSA grants Garner broad informational rights, including concerning GFP's pricing. Specifically, Section 4.6 of the MSA states:

> For a minimum period of four (4) years from the completion of Work at each particular site or project provided pursuant to this Subcontract, [GFP] ***shall preserve its books and records relating to charges for labor, supplies, materials, and costs paid by [GFP] which underlie and support the amount(s) charged to [Garner] for Work at a specific project or site***. . . . ***With reasonable advance written notice to [GFP], [Garner] shall have the right, during normal business hours, during such four (4) year period to audit [GFP]'s books and records***

> ***relating to Work performed and Services provided by [GFP] to [Garner] at the designated site(s) or project(s).***

(Maldonado Decl. Ex. A § 4.6) (emphasis added).

The MSA also allows Garner to terminate the MSA and its related agreements for any reason and at any time upon written notice to GFP. Specifically, Section 15.1 states that Garner "reserves the right to cancel or suspend, at any time, by written notice, in whole or in part, a Task Order or Scope of Work hereunder, or this Agreement." (Maldonado Decl. Ex. A § 15.1.) Section 3.3 further states that Garner "may, at any time, in its sole discretion terminate Work covered by any Task Order or Scope of Work issued hereunder." (*Id.* § 3.3.) Accordingly, Garner could terminate or demobilize GFP's services for any reason in Garner's *sole discretion* and at any time upon written notice. There is no requirement for "formal demobilization task orders," as GFP wrongly contends. (*Compare* Maldonado Decl. Ex. A *with* TAC ¶¶ 57-59.)[2]

The MSA also contains broad merger clauses in Sections 3.1 and 18.1, which state:

> 3.1 . . . This Agreement as well as the individual Task Order or Scope of Work issued for each Project to be performed by [GFP] shall constitute the complete agreement of the Parties with regard to this transaction and shall constitute a merger of all prior proposals, negotiations, and representations and may be altered, amended, or modified only in writing signed on behalf of both Parties. Any change order pursuant to the change order provisions of this Agreement, when approved in accordance therewith, shall become part of this Agreement.
>
> 18.1 This Agreement, including the Task Order or Scope of Work issued in connection herewith, represents the entire agreement between [Garner] and [GFP] with respect to the identified project, services and Work and/or Client specified, and supersedes all prior agreements and understandings whether written or oral. The terms of this Agreement may be amended or extended, and any particular term or condition hereof modified, only in writing signed by both parties referring to this Subcontract Agreement.

(Maldonado Decl. Ex. A §§ 3.1 and 18.1.)

[2] When a plaintiff attaches documents to a complaint that contradict statements in the complaint itself, the more specific document controls. *Keane v. Fox Television Stations, Inc.*, 297 F. Supp. 2d 921, 925 (S.D. Tex. 2004), *aff'd,* 129 F. App'x 874 (5th Cir. 2005).

The MSA also precludes recovery of loss of anticipated profits and consequential damages:

> 3.3. . . In no event shall [GFP] be entitled to be paid: prospectively for work not completed by reason of such termination; for work rejected by [Garner] or [the City]; nor shall [GFP] be entitled to any other compensation or damages for loss of anticipated profits or otherwise. On notice of such termination, [GFP] shall promptly remove its personnel, machinery and/or equipment from the location and shall further cooperate with [Garner] or its designee to ensure an orderly and expeditious transition and completion of the work.'
>
> 15.3 . . . In no event shall [Garner] . . . be liable (in contract or in tort, including negligence and strict liability) to [GFP] or its sub-subcontractors or suppliers of or any tier for special, indirect, incidental, or consequential damages, resulting from either Party's performance, nonperformance, or delay in performance of its obligations under this Agreement, or from [Garner]'s delay, termination (with or without cause), or suspension of the Work under this agreement or any Task Order or Scope of Work.

(Maldonado Decl. Ex. A §§ 3.3 and 15.3.)

On August 4, 2023, Garner submitted a Purchase Order to GFP for the first 30 days of performance at Randall's Island, from August 20 through September 18, 2023. (TAC ¶ 26; Maldonado Decl. Ex. B.) On October 3, 2023, Garner submitted a Purchase Order to GFP for the first 30 days of performance at Floyd Bennett Field. (TAC ¶¶ 33-34; Maldonado Decl. Ex. C.) Garner's Purchase Orders did not guarantee any amount or duration of work. (*Compare* Maldonado Decl. Exs. B-C *with* TAC ¶ 21.)

## II. GARNER'S REQUEST FOR PRICING INFORMATION

By March 2024, the Facilities had been in operation for months and the emergency had waned. On March 8, 2024, JP Temperilli, Garner's then Senior Project Manager, emailed GFP requesting – not "demand[ing]" as GFP alleges (TAC ¶ 45) – a breakdown of billings *from GFP to Garner*. (Maldonado Decl. Ex. D.) Garner was contractually entitled to review this information under the MSA. (Maldando Decl. Ex. A § 4.6.) The email states:

> As we transition here in New York and aim to optimize the project, we are hoping to get a bit more visibility into the numbers that create the aggregate per person per day (pppd) rates at the Randall's Island and Floyd Bennett Field sites. We may want

> to discuss further details in the coming days/week but for now we are looking for a breakdown in the following way:
> 1. Tents
> 2. Power & HVAC (Light Plants, Spider Boxes, cabling etc included)
> 3. Sanitation (and supporting equipment)
> 4. Personnel (w/staff quantities)
> 5. Fueling
> 6. Any ancillary support that may not lump into the above categories.
>
> Any further detail you wish to provide would be appreciated, but for the sake of timeliness these are the big numbers we need to focus on to start.

(Maldonado Decl. Ex. D.) On March 10, 2024, GFP provided a breakdown of costs charged *by GFP to Garner* categorized by general task descriptions such as lighting, flooring, restroom trailers, etc. (Maldonado Decl. Ex. E.) It neither identifies any Vendor nor did GFP state that any of the information provided was confidential or its use limited in any way. (*Id.*)

## III. THE TRANSITION AGREEMENT AND TERMINATION OF GFP'S SERVICES

Nothing in the MSA prohibited Garner from demobilizing GFP from the Facilities and contracting directly with the Vendors to secure more favorable rates than GFP offered for servicing the Facilities. Rather, the MSA allowed Garner to "at any time, in its sole discretion terminate Work covered by any Task Order or Scope of Work issued hereunder" and "cancel or suspend, at any time, by written notice, in whole or in part a Task Order or Scope of Work hereunder, of this Agreement." (Maldonado Decl. Ex. A §§ 3.3 and 15.1.) Garner provided such notice to GFP on March 15, 2024. (TAC ¶¶ 57-58, 68; Maldonado Decl. Ex. F.)

On April 5, 2025, the parties memorialized the termination of GFP's services at the Facilities in the Transition Agreement, which is styled as an "amendment of the Master Agreement solely with respect to the terms provided herein." (TAC ¶ 79; Maldonado Decl. Ex. G § 1.) In the Transition Agreement, GFP explicitly acknowledges that GFP's services at the Facilities had been terminated, and that Garner had or would take over operations at the Facilities:

> B. WHEREAS, [Garner] has taken over operations at Randall's Island prior to the date of this agreement, desires to take over operations at Floyd Bennett Field

> effective at 12:01 am ET April 9, 2024 (the "Transition Time"), and desires to terminate GFP's Services with respect to Floyd Bennett Field operations effective as of the Transition Time except as provided herein.

(Maldonado Decl. Ex. G § B.) Importantly, GFP expressly agreed that Garner would assume GFP's relationships with GFP's subcontractors (i.e., the vendors) at the Facilities. The Transition Agreement states:

> 4. Subcontractors. [Garner] acknowledges that GFP has contractual obligations with respect to its subcontractors who are engaged to provide services at Floyd Bennett Field for the benefit of [Garner] (the "Subcontractor Obligations") . . . . ***As promptly as practicable following the execution of this Agreement, GFP and [Garner] shall cooperate to effectively transition and assign the Subcontractor Obligations to [Garner].*** Notwithstanding any delay in such assignment, [Garner] agrees that it will indemnify and hold harmless GFP for all payments due to Subcontractors with respect to the Subcontractor Obligations which are incurred after the Transition Time.

(Maldonado Decl. Ex. G § 4) (emphasis added). In addition, neither the MSA nor the Transition Agreement (collectively, the "Agreements") require that GFP be fully demobilized before other vendors begin mobilization preparations. (Maldonado Decl. Exs. A, G.)

Like the MSA, the Transition Agreement imposes no confidentiality obligation on Garner. (Maldonado Decl. Ex. G.) The Transition Agreement likewise contains a broad merger clause, which states that it "represents the entire understanding of the parties with respect to the subject matter hereof and supersedes all correspondence, memoranda, conversations or other communications with respect thereto." (Maldonado Decl. Ex. G § 6.)

## IV. GFP SUES GARNER

GFP filed this action on August 9, 2024, in the United States District Court for the Southern District of New York. GFP claimed that Garner breached the Agreements, tortiously interfered with GFP's prospective economic relations with vendors, was unjustly enriched, and sought a declaration that the MSA's forum selection clause was unenforceable. (ECF No. 1 ¶¶ 120-59.) GFP also sued G&H Enterprises LLC d/b/a Rentals to Go ("Rentals to Go") and

DJ Doctor LLC d/b/a iRent Everything ("iRent Everything") for tortious interference and named the City as a "nominal defendant." (*Id.* ¶¶ 120-27, 160-69.)

Pursuant to the Individual Practices of the assigned judge (Hon. Gregory H. Woods), Garner filed a pre-motion letter on September 30, 2024 (ECF No. 27) seeking a pre-motion conference on a proposed motion to dismiss the case based on the MSA's forum selection clause and to dismiss Counts I and IV for tortious interference and unjust enrichment, respectively. GFP filed a letter opposing Garner's proposed motion in all respects. (ECF No. 35.)

On October 16, 2024, Judge Woods held a pre-motion conference. At its conclusion, Judge Woods stated that Garner and the other defendants "have made some substantial arguments, which if successful would result in the dismissal of claims against three of the four defendants here, and which if successful would result in litigation of [the] breach of contract claim [against Garner], at the very least, in a forum other than this court" and that "[t]he defendants have made a strong showing that they have meritorious arguments with respect to each of those issues." (ECF No. 43 at 37:15-23.) Judge Woods also invited the City to serve a "safe harbor letter under Rule 11 with respect to the claims against the city." (*Id.* at 32:4 - 5.)

Seeing the writing on the wall, GFP voluntarily dismissed the other defendants from the case. (ECF Nos. 45-47.) GFP then moved to transfer the case to this Court (ECF Nos. 49-50), to which Garner consented (ECF No. 54). On November 13, 2024, Judge Woods ordered the transfer. (ECF No. 55.) Pursuant to a stipulation and order (ECF No. 70), GFP filed the SAC on December 31, 2024 (ECF No. 73).

## V. GFP'S TORT CLAIMS ARE DISMISSED AND GFP FILES THE TAC

On January 31, 2025, Garner moved to dismiss the SAC's tort claims (Counts I, II and V). (ECF Nos. 75-76.) At the hearing on the motion on March 25, 2025, this Court granted Garner's motion and gave GFP leave to amend. On April 10, 2025, GFP filed the TAC. (ECF No. 88.)

In the TAC, GFP moved its fraud claim (up to Count I), abandoned its claim for tortious interference with existing contracts and added claims for fraudulent inducement (Count V), conversion (Count VI), and violation of the Texas Theft Liability Act (Count VII). As to its tortious interference with prospective business relations claim (Count II), GFP reduced the number of vendors it claims Garner allegedly interfered with from twenty-one to nine. (TAC ¶ 39.) GFP's fraud, fraudulent inducement, and tortious interference claims (Counts I, II, and V) still fail as a matter of law and should be dismissed.

## ARGUMENT

### I. GFP MUST STATE A PLAUSIBLE CLAIM TO SURVIVE DISMISSAL

Under Federal Rule of Civil Procedure 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face'" allowing the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the Court must accept well-pleaded factual allegations as true, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-81. Dismissal is appropriate where the plaintiff fails to "raise a right to relief above the speculative level." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 148 (5th Cir. 2010) (citation omitted).

The Court may consider documents that a defendant attaches to a motion to dismiss as "part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). Here, GFP's allegations are based on conduct connected to the Agreements. (TAC ¶¶ 108-66.) Thus, the Agreements, Purchase Orders, and communications referenced by GFP in the TAC should be considered on this motion because they are referenced in and are "central" to the TAC. *See, e.g.*,

*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (holding that an agreement and assessment about a potential merger were incorporated by reference where they were "central" to the complaint). GFP's tort claims rest on allegations that: (1) Garner requested GFP's pricing information (Exhibit D); (2) GFP provided it (Exhibit E); and (3) Garner terminated (i.e., "cut out") GFP from the Facilities (Exhibits A, G, F). (TAC ¶¶ 45-47, 54, 57, 59, 73, 95, 97, 99, 101, 103, 151.) These exhibits are thus "central" to GFP's tort claims and may be considered on this motion. *CHRISTUS Health v. AMISYS, LLC*, No. CIV.A.H-05-1045, 2005 WL 2388258, at *1 (S.D. Tex. Sept. 26, 2005) (attaching the parties' contract and a written communication did not convert motion to summary judgment).

## II. GFP FAILS TO STATE A FRAUD CLAIM (COUNT I)

GFP's fraud claim fails under Federal Rules of Civil Procedure 9(b) and 12(b)(6). To state a claim for fraud, a plaintiff must plead with specificity that: "(1) a material representation was made, (2) that the representation was false[ ] when [it] was made, (3) the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) that the speaker made the misrepresentation with the intent that the other party should act upon it, (5) the party acted in reliance on the misrepresentation, and (6) the party thereby suffered injury." *Farshchi v. Wells Fargo Bank, N.A.*, No. CV H-15-1692, 2016 WL 2858903, at *6 (S.D. Tex. May 13, 2016) (quotations and citations omitted). Further, fraud claims are subject to the heightened pleading requirements under Federal Rule of Civil Procedure 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Id.* at *6 (citing *Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1033-34 (5th Cir. 2010)).

GFP's fraud claim relies on two alleged misrepresentations by Garner: (1) that Garner required "additional discounts on GFP's goods and services for the sole benefit of the City," and (2) that Garner required GFP's pricing information "to determine certain available discounts on the projects as required by, and to be passed on in the form of additional savings to, the City." (TAC ¶ 110.) GFP does not meet the pleading requirements for either alleged statement.

**A. GFP's Fraud Claim Based on Discounts Allegedly Requested by Garner Fails**

GFP fails to plead its fraud claim as to the "additional discounts" requested by Garner with particularity because the TAC fails to sufficiently allege: (1) the topic of the alleged misrepresentation; (2) why the representation was material; (3) justifiable reliance; and (4) whether Garner knew the representation was false at the time it was made or that it was made recklessly.

***i. GFP Does Not Plead a Misrepresentation with the Required Specificity***

First, a fraud claim is "fatally deficient" when it is composed of conclusory statements that loosely track the elements of a claim for fraud. *Farshchi*, 2016 WL 2858903, at *6 (internal quotations and citations omitted). In support of its fraud claim, the TAC alleges, "On February 14, 2024, Lawrence Crowe on behalf of Garner called Don Pollard on behalf of GFP and represented that Garner needed further discounts from GFP to be passed on directly to the City" and that "GFP provided Garner with additional discounts upon request." (TAC ¶ 42.) However, the TAC is devoid of any allegations as to what "additional discounts" were requested by Mr. Crowe, *i.e.* what the specific discounts were for, at which Facility, and for what project or service.

***ii. GFP Fails to Sufficiently Plead that the Representation Was Material***

Second, the TAC does not explain why this representation was material. "A false representation is material if a reasonable person would attach importance to and be induced to act on the information." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010) (citation omitted). Garner's alleged representation that it needed further

discounts to be passed on to the City is "inherently vague and ambiguous." *Id.* GFP did not plead that Garner "presented any detailed, corroborating information, facts or figures to support the statement that might entice a reasonable person to attach importance to the statement." *Id.*

***iii. The Fraud Claim Fails to Sufficiently Plead Justifiable Reliance***

Third, "[w]hile a false promise of future performance may be actionable as a false representation, the plaintiff must show that the promise was sufficiently certain and of the type that a person could reasonably and justifiably rely on. . . . An illusory promise will not give rise to a cause of action for fraud." *Livingston v. Shaffer*, No. 02-22-00151-CV, 2023 WL 1860001, at *3 (Tex. App. Feb. 9, 2023) (citation omitted). Here, Mr. Crowe's alleged statement that "Garner needed further discounts from GFP to be passed on directly to the City" is not sufficiently specific to support a fraud cause of action. (TAC ¶ 42.) For example, it is unclear what exactly Mr. Crowe meant, or when or how much of the requested discount would be passed on. *See Livingston*, 2023 WL 1860001, at *3 ("It is unclear what exactly Shaffer meant when he allegedly said that he would 'hold on' to Livingston's property or for how long he would 'hold on' to it."); *Emerald Aerospace, LLC v. Boeing Co.*, No. 3:22-CV-0717-B, 2022 WL 16701941, at *9 (N.D. Tex Nov. 3, 2022) ("[T]he promises that Boeing would award Emerald the . . . subcontracts were not specific as to the material terms of the contract. Because these promises were indefinite, any reliance thereon by Emerald was unjustified as a matter of law.").

Moreover, the TAC provides nothing more than a conclusory statement as to whether GFP justifiably relied on this representation. GFP claims that it "justifiably relied on this specific representation of Garner in further discounting its already heavily discounted rates for the sole benefit of the City." (TAC ¶ 42.) However, the TAC contains no factual support for why reliance on this statement is justified. Nor does the TAC allege what discounts were provided by GFP, when they were provided, or what the alleged damages are.

#### *iv. GFP Fails to Plausibly Allege a Knowing or Reckless False Statement*

Fourth, to survive a motion to dismiss, GFP must allege with particularity that "the speaker knew [a material and false representation] was false or made it recklessly without any knowledge of the truth and as a positive assertion." *Farshchi*, 2016 WL 2858903, at *6 (quotations and citations omitted). "Although Rule 9(b) expressly allows scienter to be averred generally, simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b). . . . The plaintiff[] must set forth specific facts supporting an inference of fraud." *Owens v. BAC Home Loans Servicing, L.P.*, No. CIV.A. H-11-2742, 2012 WL 1494231, at *4 (S.D. Tex. Apr. 27, 2012) (internal quotations and citations omitted). Conclusory allegations are insufficient. *Curtis v. Cerner Corp.*, 621 B.R. 141, 170 (S.D. Tex. 2020).

GFP does not sufficiently allege that Garner knew the representation was false at the time it was made or that it was made recklessly. The only factual support the TAC alleges is that "a former Garner employee has since confirmed that the requested savings were never intended to be passed on to the City, and that Garner was trying to increase its own profits." (TAC ¶ 74.) Without more, it is not clear what requested savings were never intended to be passed to the City, who specifically at Garner made this allegedly confirmatory statement and when, whether the information "confirmed" applies to Mr. Crowe's request for discounts on February 14, 2024, and whether Mr. Crowe knew the alleged statement was false when made. The fraud claim fails for this additional reason. *Curtis*, 621 B.R. 141, 170 ("Plaintiff does not allege . . . why the statements were knowingly or recklessly false when made."); *Montalvo v. Specialized Loan Servicing LLC*, No. SA-21-CV-00964-JKP, 2022 WL 3031078, at *4 (W.D. Tex. July 30, 2022) ("[E]ven accepted as true, the allegation that SLS and U.S. Bank never intended to abide by the repayment terms and made a false representation of default with the intent that Montalvo act upon it does not support a fraud cause of action.").

### B. GFP's Fraud Claim Based on GFP's Pricing Information Likewise Fails

GFP's claim that Garner defrauded GFP into providing Garner with GFP's pricing information also fails because GFP fails to sufficiently allege: (1) justifiable reliance; (2) causation; and (3) whether Garner knew the alleged representation was false at the time it was made or that it was made recklessly.

#### *i. GFP Fails to Plausibly Allege a Knowing or Reckless False Statement*

For the same reasons discussed above with respect to the discounts, GFP does not sufficiently allege that Garner knew the representation that it needed GFP's pricing information to pass savings onto the City was false at the time it was made or that it was made recklessly. The TAC relies on the same vague allegation that "a former Garner employee has since confirmed that the requested savings were never intended to be passed on to the City" as its only form of factual support. (TAC ¶ 74.) As with GFP's other basis for its fraud claim, it is unclear what requested savings were never intended to be passed to the City, who at Garner made this statement and when, and whether the information "confirmed" applies to Garner's request for pricing information on March 8, 2024. Accordingly, the fraud claim fails for this reason alone.

#### *ii. The Agreements Defeat Justifiable Reliance*

Nor could GFP have reasonably relied on any alleged misrepresentation given the express language of the parties' contracts. *Grp. One Dev., Inc. v. Bank of Lake Mills, No*. CV H-17-0375, 2017 WL 2937709, at *3 (S.D. Tex. July 7, 2017) ("[R]eliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law.") (citing *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App. 2003)); *Mut. of Omaha Bank v. Mayer*, No. 4:15-CV-01598, 2016 WL 3654652, at *2 (S.D. Tex. July 7, 2016) (same). Here, the MSA's books and records inspection clause, the Transition Agreement's clause allowing Garner to contract with

GFP's Vendors, and the Agreements' merger clauses defeat GFP's claim that Garner defrauded GFP into providing Garner with allegedly confidential pricing information.

First, as discussed above, the MSA granted GFP broad inspection rights, including "***relating to [GFP's] charges for labor, supplies, materials, and costs paid by [GFP] which underlie and support the amount(s) charged to [Garner] for Work at a specific project or site***." (Maldonado Decl. Ex. A § 4.6) (emphasis added). Garner did not need to ask for the information; it was contractually entitled to demand access to GFP's books and records to get that information for itself. Thus, not only did the parties' contracts provide no confidentiality protection to GFP's pricing information, the MSA granted Garner the right to review that information. Given that Garner had a contractual right to receive GFP's pricing information, Garner could not have defrauded GFP into providing that information.

Second, GFP specifically agreed in the Transition Agreement that Garner, *with GFP's cooperation*, would contract with GFP's Vendors. Section 4 of the Transition Agreement states:

> 4. Subcontractors. [Garner] acknowledges that GFP has contractual obligations with respect to its subcontractors who are engaged to provide services at Floyd Bennett Field for the benefit of [Garner] (the "Subcontractor Obligations") . . . . ***As promptly as practicable following the execution of this Agreement, GFP and [Garner] shall cooperate to effectively transition and assign the Subcontractor Obligations to [Garner].*** Notwithstanding any delay in such assignment, [Garner] agrees that it will indemnify and hold harmless GFP for all payments due to Subcontractors with respect to the Subcontractor Obligations which are incurred after the Transition Time.

(Maldonado Decl. Ex. G § 4) (emphasis added). When GFP signed the Transition Agreement, GFP had already provided the pricing information to Garner. (TAC ¶¶ 54, 71, 79.) Thus, GFP knew or should have known that Garner might use that information to contract with Vendors.

Third, under Texas law, a merger clause can preclude a plaintiff from establishing the reliance element of its fraud claims where it evinces a "clear and unequivocal expression[] of intent by two sophisticated and knowledgeable parties, represented by counsel and dealing at arms

length, to disclaim reliance on [] alleged representations beyond the terms of the [agreement]." *In re Margaux Warren Park Partners, Ltd.*, No. 08-43388, 2009 WL 5061806, at *5 (Bankr. E.D. Tex. Dec. 15, 2009) (citations omitted); *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 571 (5th Cir. 2003) (same). In *Armstrong*, the Fifth Circuit held that a merger clause precluded a fraud claim where the clause stated that the agreement "shall constitute the entire contract between the parties and supercedes [sic] all existing agreements between them, whether oral or written, with respect to the subject matter hereof." *Armstrong*, 333 F.3d 566, 571.

Here, the Transition Agreement's merger clause contains similar language:

> This Agreement represents the entire understanding of the parties with respect to the subject matter hereof and supersedes all correspondence, memoranda, conversations or other communications with respect thereto.

(Maldonado Decl. Ex. G § 6.) Further, GFP and Garner are both sophisticated parties dealing at arms-length. GFP also acknowledged in the Transition Agreement that it was terminated from the Facilities and agreed to "cooperate [with GFP] to effectively transition and assign" GFP's contractual obligations with its Vendors to Garner. (Maldonado Decl. Ex. G §§ B, 4.)

In short, not only did the MSA give Garner the right to review GFP's pricing information, but the Transition Agreement expressly permitted Garner to contract with the Vendors. Accordingly, the Transition Agreement's plain terms preclude GFP's claim that it reasonably relied on Garner's alleged statement that costs savings would be passed along to the City before providing GFP's pricing information as Garner had a contractual right to review that pricing information in any event. GFP would have had to give Garner the information anyway.

#### ***iii. GFP Fails to Sufficiently Plead Causation***

To state a claim for fraud, GFP must also plausibly allege that "the defendant's . . . misrepresentations were a cause-in-fact, *i.e.*, 'but for' or 'substantial factor' in plaintiff's injury." *Setliff v. Zoccam Techs., Inc.*, No. 3:21-CV-2025-B, 2022 WL 4240893, at *17 (N.D. Tex.

Sept. 13, 2022) (citations omitted). Here, the TAC fails to plausibly allege that its conduct in reliance on the misrepresentation – GFP providing the pricing information to Garner – caused the alleged harm, namely, GFP being terminated from the Facilities.

The allegations in the TAC and the documents incorporated by reference therein demonstrate that: (i) Garner had the right to terminate GFP at any time, and in its sole discretion, upon written notice (Maldonado Decl. Ex. A §§ 3.3, 15.1); (ii) Garner had a contractual right to see GFP's pricing information (*id.* § 4.6); (iii) GFP provided Garner with its pricing information upon Garner's request (TAC ¶ 54); and (iv) GFP entered into the Transition Agreement, which memorialized GFP's termination from the Facilities and provided that GFP's Vendor contracts would be assigned to Garner (Maldonado Decl. Ex. G §§ B, 4.). Accordingly, GFP does not and cannot demonstrate that, but for GFP providing Garner with GFP's pricing information, GFP would not have been terminated from the Facilities. Indeed, even if GFP did not provide Garner with the pricing information – to which Garner was entitled under the MSA – Garner had the contractual right under the Agreements both to terminate GFP and to contract with the Vendors. Thus, the fraud claim must be dismissed for this reason too. *Hernandez v. Ciba-Geigy Corp. USA*, 200 F.R.D. 285 (S.D. Tex. 2001) (dismissing fraud claim for failure to plead causation).

**C. GFP's Fraud Claim Fails to Plausibly Allege Injury**

With respect to the alleged fraud to obtain discounts and GFP's pricing information, GFP alleges that it "has been injured and damaged by: (1) losing profits it would have made but for the further discounts it provided based on Defendants' false representation that they were needed for the sole benefit of the City; and (2) losing profits it would have made but for being cut out of the Asylum Seeker Facilities." (TAC ¶ 114.) However, as discussed above, GFP could not obtain additional profits from the Facilities even if Garner did not make the alleged misrepresentations. GFP was terminated from the Facilities and GFP's Vendor relationships in

connection with the Facilities were transitioned to Garner pursuant to the Transition Agreement. (Maldonado Decl. Ex. G §§ B, 3, 4.) Accordingly, GFP does not sufficiently plead damages. *Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (affirming dismissal of fraud claim for failure to allege damages and their extent).

In addition, GFP's claim for lost profits damages is specifically precluded by the MSA. Section 3.3 of the MSA states, "In no event shall Subcontractor be entitled to be paid: prospectively for work not completed by reason of such termination; for work rejected by Contractor or Client; ***nor shall Subcontractor be entitled to any other compensation or damages for loss of anticipated profits or otherwise***." (Maldonado Decl. Ex. A § 3.3.) Such clauses are enforceable under Texas law. *Bergholtz v. Sw. Bell Yellow Pages, Inc.*, 324 S.W.3d 195, 199 (Tex. App. 2010) (upholding clause precluding lost profits); *Marathon Oil Co. v. Koch Energy Servs., LLC*, No. CV H-21-1262, 2025 WL 950085, at *8 (S.D. Tex. Mar. 28, 2025) (same). Thus, GFP's fraud claim fails for this additional reason.

## III. GFP FAILS TO STATE A CLAIM FOR FRAUDULENT INDUCEMENT (COUNT V)

GFP likewise fails to state a claim for fraudulent inducement. "To state a claim for fraudulent inducement under Texas law a party must allege all of the elements of fraud in addition to the fact that he entered into a binding agreement as a result of an alleged misrepresentation." *Murphree v. Godshall*, No. CIV.A. H-13-0453, 2014 WL 4782936, at *6 (S.D. Tex. Sept. 24, 2014) ("Fraudulent inducement . . . is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. That is, with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties.") (citing *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001).

### A. GFP's Fraudulent Inducement Claim Lacks the Requisite Specificity

GFP relies on the same alleged misrepresentation by Mr. Crowe to make out its claim for fraudulent inducement as it does to make out its claim for common law fraud as to the additional discounts. (TAC ¶¶ 42, 110, 149.) As the elements of fraudulent inducement include the elements of fraud, GFP's fraudulent inducement claim fails for the same reasons that its fraud claim fails – namely GFP fails to allege sufficiently: (1) the topic of the alleged misrepresentation; (2) why the representation was material; (3) justifiable reliance; and (4) whether Garner knew the representation was false at the time it was made or that it was made recklessly. *See supra* at II.A.

### B. GFP Fails to Sufficiently Plead That It Was Induced to Enter a Contract

To state a fraudulent inducement claim, GFP must also allege that it was induced to enter into a contract with Garner. *In re Shelton*, No. 13-70583, 2014 WL 1576864, at *8 (Bankr. S.D. Tex. Apr. 18, 2014) ("A plaintiff must show that a contractual promise was made by the defendant with no intention of performing, or that the contract was originally obtained by false statements or fraudulent conduct."); *Haase*, 62 S.W.3d at 798 ("Texas law has long imposed a duty to abstain from inducing another to enter into a contract through the use of fraudulent misrepresentations. Certainly there can be no breach of that duty when one is not induced into a contract.").

Here, GFP does not allege that it was fraudulently induced to enter into an agreement with Garner as required for a fraudulent inducement claim. Instead, GFP alleges that Garner "induce[d] [GFP] to agree to multiple discounts" by alleging that these discounts were required to be "passed on directly to the City." (TAC ¶ 149.) GFP relies on the allegation that Garner misrepresented a promise to pass savings onto the City, which is not a contractual promise to GFP. Moreover, the TAC contains no allegations that these discounts were contemplated by the Agreements, which contain no such language. (Maldonado Decl. Exs. A, G.)

Indeed, GFP pleads that Garner made the relevant misrepresentation on February 14, 2024, years after the parties signed the MSA. (TAC ¶ 42.) Because the conduct that forms the basis of the fraudulent inducement claim post-dates the MSA, it cannot support any plausible claim that GFP was fraudulently induced to sign that contract. *Murphree v. Godshall*, No. CIV.A. H-13-0453, 2014 WL 4782936, at *8 (S.D. Tex. Sept. 24, 2014) ("The representations alleged . . . are not capable of supporting Godshall's fraudulent inducement counterclaim because the representations . . . are all alleged to have been made long after Godshall executed the PIA . . . and, therefore, could not have induced Godshall to enter into the PIA."). The TAC likewise contains no allegations that the allegedly induced discounts were contemplated by or reflected in the Transition Agreement, which contains no such indication. (Maldonado Decl. Ex G.) GFP's fraudulent inducement claim thus fails for this additional reason.

## IV. GFP FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS (COUNT II)

Under Texas law, to prevail on a claim for tortious interference with prospective business relations, a plaintiff must show: "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result." *Geolink Ltd. (U.K.) v. Mahmood*, No. 4:21-CV-803, 2022 WL 2124519, at *7 (S.D. Tex. Mar. 18, 2022) (citations omitted). Interference is intentional if "the defendant had actual knowledge of the prospective business relations . . . [and] the defendant intended to interfere or was substantially certain that interference would result, but not if the interference was incidental." *Greater Houston Transp. Co. v. Uber*

*Techs., Inc.*, No. CIV.A. 4:14-0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10, 2015). Further, "tortious interference with prospective business relations requires that the plaintiff show independently tortious or unlawful conduct by the defendant." *Id.* To satisfy this requirement GFP must plead that Garner's conduct "would be actionable under a recognized tort." *Id.* (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)). GFP does not and cannot plead these elements.

### A. GFP Does Not Plausibly Plead a Reasonable Probability of Entering Business Relationships With the Vendors Concerning the Facilities

A claim for tortious interference with prospective business relations first requires "a reasonable probability that the plaintiff would have entered into a business relationship with a third party." *Geolink Ltd. (U.K.)*, 2022 WL 2124519, at *7 (citations omitted). GFP does not satisfy this element. The TAC vaguely states that GFP "entered into a number of agreements" with nine Vendors at the Facilities. (TAC ¶ 39.) However, the TAC does not explain how or why GFP had a "reasonable probability" of entering future transactions with any Vendor, especially given that GFP does not dispute that it was terminated.

To the contrary, the TAC itself refutes any assertion that it would have entered business relations with iRent Everything and Rentals to Go (the former co-Defendants that GFP voluntarily dismissed) by alleging that they "conspired [with Garner] . . . to cut GFP out of the Asylum Seeker Facilities entirely." (*Id.* ¶ 73.) GFP cannot simultaneously assert that these vendors were conspiring to cut GFP out of the Facilities, but also that GFP had a reasonable probability of doing further business with them in connection with those same Facilities. The TAC also does not contain any non-conclusory allegations concerning five other Vendors (AAA Mobile Solutions, Granny's Alliance, Hightowers Petroleum Company, Select Event Group, or Sunbelt Rentals), which collectively only appear in three conclusory statements in the TAC . (*Id.* ¶¶ 39, 97, 99.)

Finally, the TAC's allegations regarding Garner reaching out to Lantier Tent Structures and Main Attractions all concern conduct that occurred after the Transition Agreement was executed (TAC ¶¶ 95, 97, 98, 103) – in other words, after GFP memorialized its termination from the Facilities and agreed to cooperate to transition its Vendor contracts to Garner. (Maldonado Decl. Ex. G §§ B, 3, 4.)

Nor can GFP rely on its "preexisting business relationship[s]" with the Vendors to show a reasonable probability "that the business relationships with the GFP Vendors would have continued for the duration of the Asylum Seeker Facilities, which shuttered in or around February 2025." (TAC ¶ 119.) As discussed above, the Agreements themselves defeat this argument because Garner had the right to terminate GFP at any time (Maldanado Decl. Ex. A §§ 3.3, 15.1), and because GFP was terminated well before the Facilities shut down in February 2025, as memorialized by the Transition Agreement (Maldonado Decl. Ex. G §§ B, 3). Once GFP was terminated from the Facilities, GFP had no reasonable probability of doing business with the Vendors at the Facilities.

**B. GFP Does Not Plausibly Plead Intentional and Malicious Interference**

GFP must also plead that Garner's conduct was "an intentional, malicious intervention or an independently tortious or unlawful act." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19 (citations omitted). "Malice in this connection is not to be understood in its ordinary sense of ill will against a person, but in its legal sense as characterizing an unlawful act done intentionally without just cause or excuse." *Brown v. Wilson Cnty.*, No. SA-97-CA-1473-OG, 1999 WL 33290666, at *17 (W.D. Tex. Mar. 31, 1999) (citations omitted). Interference "is intentional if . . . the defendant intended to interfere or was substantially certain that interference would result, but not if the interference was incidental." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19 (citation omitted); *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,

No. 4:15-CV-00627, 2016 WL 8648927, at *11 (S.D. Tex. Mar. 29, 2016) ("[I]nterference is not improper if the defendant had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose.") (internal quotations and citations omitted).

The TAC itself contradicts any claim that Garner's actions were intended to harm GFP or interfere with its relationships. The TAC alleges (albeit falsely) that "Garner was keeping GFP's discounts to increase its profit margins for its own benefit." (TAC ¶ 52.) There is nothing malicious about seeking to cut out an unnecessary middleman to increase profits.

**C. GFP Fails to Allege That Garner's Actions Were Independently Tortious**

GFP must plausibly plead that Garner's conduct was "an independently tortious or unlawful act." *Greater Houston Transp. Co.*, 2015 WL 1034254, at *19 (citation omitted). "[T]ortious interference with prospective business relations requires that the plaintiff show independently tortious or unlawful conduct by the defendant." *Id.* (citations omitted). Independently tortious or unlawful conduct means that the "defendant's conduct would be actionable under a recognized tort." *Id.* (citing *Wal-Mart Stores, Inc.*, 52 S.W.3d at 726).

GFP fails to explain how Garner's actions "rise[] above the level of 'sharp or unfair' conduct, and amounts to an independently actionable tort." *Specialties of Mexico Inc. v. Masterfoods USA,* No. CIV.A. L-09-88, 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010) (citations omitted). GFP contends that Garner engaged in fraud to obtain and use GFP's pricing information to support its claim of independently tortious conduct. (TAC ¶ 124.) As demonstrated above in Sections II and III, GFP does not state a claim for fraud, and there was nothing improper about Garner's request for pricing information, which was specifically authorized by the MSA without any need for a reason. (Maldonado Decl. Ex. A § 4.6.) And even if Garner did not have a contractual right to review that information (which Garner did) the emails incorporated by

reference in the TAC demonstrate that Garner requested a breakdown of GFP's pricing to Garner – not Vendors' pricing to GFP. (TAC ¶¶ 45-46, 54; Maldonado Decl. Exs. D-E.)

GFP also does not explain how or why any of the information it provided to Garner was confidential or allege that GFP took any steps to protect that information. Indeed, the confidentiality clause in the MSA protects only *Garner's information, not GFP's*. (Maldonado Decl. Ex. A § 14.1-4.) If GFP wanted a confidentiality or other non-use agreement, GFP should have asked for one. It did not. *See DT Apartment Grp., LP v. CWCapital, LLC*, No. 3:12-CV-0437-D, 2012 WL 6693192, at *12 (N.D. Tex. Dec. 26, 2012) ("Texas does not recognize a claim for misuse of confidential information that is not either secret or, at least substantially secret."); *Richter v. Carnival Corp.*, No. 3:18-CV-2172-N, 2020 WL 1876098, at *6 (N.D. Tex. Apr. 15, 2020) ("[Plaintiff] failed to sufficiently allege that she kept the information secret, or substantially secret."), *aff'd*, 837 F. App'x 260 (5th Cir. 2020); *see also Fast Cap. Mktg., LLC v. Fast Cap. LLC*, No. CIV. A. H-08-2142, 2008 WL 5381309, at *18 (S.D. Tex. Dec. 24, 2008) (dismissing tortious interference claim where information disclosed did not qualify as "confidential information" under relevant contract).

Finally, neither the Agreements nor the law precludes Garner from seeking better prices directly from vendors and cutting out unnecessary middlemen. In *Specialties of Mexico Inc.*, the court dismissed a claim for tortious interference with prospective business relations because "Plaintiffs have not alleged how Defendant's instruction to Sell-Thru to stop selling their goods to Plaintiffs rises above the level of 'sharp or unfair' conduct, and amounts to an independently actionable tort." 2010 WL 2488031, at *10 (citing *Wal-Mart Stores, Inc.,* 52 S.W.3d at 726).

**D. GFP Fails to Allege that Garner's Interference Proximately Caused Injury**

A claim for tortious interference with prospective business relations fails in the absence of facts showing that the plaintiff would have done business with a third party but for the alleged

interference. *Priority Design & Serv., Inc. v. Plaza*, No. SA-19-CV-00058-OLG, 2019 WL 2124677, at *4-5 (W.D. Tex. May 15, 2019). "To recover for tortious interference with prospective business relations, the plaintiff must demonstrate that the alleged interference prevented the plaintiff from securing a contract." *Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*, 472 S.W.3d 744, 770 (Tex. App. 2015). GFP fails to plead causation for at least two simple reasons.

First, the TAC is devoid of allegations that Garner persuaded any Vendor not to transact with GFP, such as by "offering better terms or other incentives," as required for a tortious interference claim. *M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010). To the contrary, GFP concedes that Garner offered "substantially the same terms for nearly every one of GFP's vendors." (TAC ¶ 50.) This allegation alone negates GFP's tortious interference claim. *See M-I LLC,* 733 F. Supp. 2d at 775 (no interference without offering better terms or other incentives).

Second, GFP fails to allege any business that GFP would have contracted with each Vendor but for Garner's alleged interference. As discussed above, GFP agreed in the Transition Agreement that it was terminated, would do no further work at the Facilities, and would transition the Vendors to Garner. (Maldonado Decl. Ex. G §§ B, 3, 4.) Thus, GFP obviously could not have done additional work with the Vendors at the Facilities.

### E. GFP Fails to Allege Damage or Loss as a Result of the Alleged Interference

GFP must plead that it "suffered actual damage or loss as a result" of Garner's alleged interference. *Geolink Ltd. (U.K.)*, 2022 WL 2124519, at *7 (citations omitted). The TAC baldly claims that Garner "caused GFP's damages by intentionally cutting GFP out of the Asylum Seeker Facilities for their duration through February 2025, costing GFP millions of dollars in lost profits and unjustly enriching Garner in the amount of profits GFP would have otherwise earned but for Garner cutting out GFP from the Asylum Seeker Facilities." (TAC ¶ 125.) Without plausibly

alleging that there was a reasonable probability that a certain contract or transaction would have been entered into by GFP and the Vendors but for Garner's interference, there can be no plausible resulting injury. GFP's allegations thus "amount to nothing more than a formulaic recitation of the elements of these causes of action, which is insufficient to state a claim." *Priority Design & Serv., Inc.*, 2019 WL 2124677, at *5 (citations omitted).

Finally, GFP's tortious interference claim is another transparent attempt to circumvent the MSA's damage limitation clauses, which preclude GFP from collecting lost profits or other consequential damages. (Maldonado Decl. Ex. A §§ 3.3, 15.3.) Lost profits resulting from the loss of Vendor contracts or relationships are consequential. *See In re ATP Oil & Gas Corp.*, 517 B.R. 756, 763 (Bankr. S.D. Tex. 2014); A-*Delta Overnight Legal Reprod. Servs. Corp. v. David W. Elrod, PLLC*, No. 05-11-00708-CV, 2012 WL 5351265, at *3 (Tex. App. Oct. 31, 2012). Thus, the damages that GFP seeks are barred by the MSA.

## CONCLUSION

For the foregoing reasons, GFP's claims for fraud, tortious interference, and fraudulent inducement (Counts I, II, and V) should be dismissed with prejudice, and the Court should award Garner such other and further relief as the Court deems just and proper.

Dated: Dallas, Texas
May 1, 2025

**McDermott Will & Emery LLP**

/s/ *David Genender*
David Genender
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295 8000

Jordan Kazlow
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
(713) 653-1700

Andrew B. Kratenstein (admitted *pro hac vice*)
Alexandra Nasar (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
(212) 547-5400

*Attorneys for Garner Environmental Services, Inc.*