**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| GFP ENTERPRISES LLC *a.k.a* GFP RESPONSE LLC, | § | |
| *Plaintiff*, | § | |
| v. | § | Civil Action No. 4:24-cv-04517 |
| GARNER ENVIRONMENTAL SERVICES, INC., | § | |
| *Defendant*. | § | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GARNER ENVIRONMENTAL SERVICES, INC.'S MOTION TO DISMISS COUNTS I, II, AND V OF <u>THE THIRD AMENDED COMPLAINT</u>**

**MCDERMOTT WILL & EMERY LLP**

David Genender
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295 8000

Jordan Kazlow
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
(713) 653-1700

Andrew B. Kratenstein (admitted *pro hac vice*)
Alexandra Nasar (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
(212) 547-5400

## TABLE OF CONTENTS

ARGUMENT ........................................................................ 1

I. GFP STILL HAS NO FRAUD CLAIM ........................................ 1

A. GFP Does Not Adequately Plead Fraud to Obtain Discounts ........ 1

B. GFP Does Not Adequately Plead Fraud to Obtain GFP's Pricing Information ........................................ 3

II. GFP STILL HAS NO FRAUDULENT INDUCEMENT CLAIM ........ 6

III. GFP STILL HAS NO TORTIOUS INTERFERENCE CLAIM ........ 7

CONCLUSION ........................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. American Home Shield Corp.*,
333 F.3d 566 (5th Cir. 2003) ....................5

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
No. 4:15-CV-00627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016) ....................8

*Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*,
472 S.W.3d 744 (Tex. App. 2015)....................10

*City of Clinton, Ark. v. Pilgrim's Pride Corp.*,
632 F.3d 148 (5th Cir. 2010) ....................2

*Curtis v. Cerner Corp.*,
621 B.R. 141 (S.D. Tex. 2020) ....................3

*DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*,
112 S.W.3d 854 (Tex. App. 2003)....................4

*Emerald Aerospace, LLC v. Boeing Co.*,
No. 3:22-CV-0717-B, 2022 WL 16701941 (N.D. Tex Nov. 3, 2022)....................2, 5

*Fast Cap. Mktg., LLC v. Fast Cap. LLC*,
No. CIV. A. H-08-2142, 2008 WL 5381309 (S.D. Tex. Dec. 24, 2008)....................10

*Formosa Plastics Corp., USA v. Presidio Eng'rs & Contractors*,
941 S.W.2d 138 (Tex. App.—Corpus Christi 1995), *rev'd on other grounds*,
960 S.W.2d 41 (Tex. 1998)....................7

*Garcia v. Universal Mortg. Corp.*,
No. 3:12-CV-2460-L, 2013 WL 1858195 (N.D. Tex. May 3, 2013) ....................1

*Grant Thornton LLP v. Prospect High Income Fund*,
314 S.W.3d 913 (Tex. 2010)....................2

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
No. CIV.A. 4:14-0941, 2015 WL 1034254 (S.D. Tex. Mar. 10, 2015)....................9

*Holmes v. P.K. Pipe & Tubing, Inc.*,
856 S.W.2d 530 (Tex. App. 1993)....................2

*Horton v. Robinson*,
776 S.W.2d 260 (Tex. App.—El Paso 1989, no writ) ....................8

*In re Horton*,
85 F.3d 625 (5th Cir. 1996) ........................................................................................8

*Livingston v. Shaffer*,
No. 02-22-00151-CV, 2023 WL 1860001 (Tex. App. Feb. 9, 2023) ...............................1, 2, 5

*M-I LLC v. Stelly*,
733 F. Supp. 2d 759 (S.D. Tex. 2010) ............................................................................7

*Marathon Corp. v. Pitzner*,
106 S.W.3d 724 (Tex. 2003)...........................................................................................6

*Montalvo v. Specialized Loan Servicing LLC*,
No. SA-21-CV-00964-JKP, 2022 WL 3031078 (W.D. Tex. July 30, 2022)............................3

*Murphree v. Godshall*,
No. CIV.A. H-13-0453, 2014 WL 4782936 (S.D. Tex. Sept. 24, 2014) ..................................7

*Owens v. BAC Home Loans Servicing, L.P.*,
No. CIV.A. H-11-2742, 2012 WL 1494231 (S.D. Tex. Apr. 27, 2012) ...................................3

*Priority Design & Serv., Inc. v. Plaza*,
No. SA-19-CV-00058-OLG, 2019 WL 2124677 (W.D. Tex. May 15, 2019) ........................10

*Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*,
607 F.3d 1029 (5th Cir. 2010) ...................................................................................1, 2

*Siragusa v. Arnold*,
No. 3:12-CV-04497-M, 2014 WL 3512988 (N.D. Tex. July 16, 2014)...................................3

*Steinberg v. Brennan*,
No. CIV.A. 3:03-CV-0562-, 2005 WL 1837961 (N.D. Tex. July 29, 2005)............................5

*Times Herald Printing Co. v. A.H. Belo Corp.*,
820 S.W.2d 206 (Tex. App. 1991)....................................................................................8

*Total Quality Logistics, LLC v. Medellin*,
No. SA-23-CV-00333-XR, 2023 WL 7289396 (W.D. Tex. Nov. 2, 2023) .............................9

*Wal-Mart Stores, Inc. v. Sturges*,
52 S.W.3d 711 (Tex. 2001)..............................................................................................8

*Wellogix, Inc. v. Accenture, LLP*,
788 F. Supp. 2d 523 (S.D. Tex. 2011) ..........................................................................10

*William Marsh Rice Univ. v. Arrowhead Rsch. Corp.*,
No. CV 14-03496, 2015 WL 10987080 (S.D. Tex. July 23, 2015)..........................................6

*Wolf v. Cowgirl Tuff Co.*,
No. 1:15-CV-1195 RP, 2016 WL 4597638 (W.D. Tex. Sept. 2, 2016)....................................7

**Other Authorities**

Fed. R. Civ. P 9(b) ........................................................................................................1, 3

## ARGUMENT

## I. GFP STILL HAS NO FRAUD CLAIM

GFP has not salvaged its fraud claim that (1) Garner required "additional discounts on GFP's goods and services for the sole benefit of the City," and (2) Garner required GFP's pricing information "to determine certain available discounts on the projects as required by, and to be passed on in the form of additional savings to, the City." (TAC ¶ 110.)

### A. GFP Does Not Adequately Plead Fraud to Obtain Discounts

*First*, GFP's fraud claim fails because it does not "sufficiently identify the specific representations" that were allegedly fraudulent. *Garcia v. Universal Mortg. Corp.*, No. 3:12-CV-2460-L, 2013 WL 1858195, at *9 (N.D. Tex. May 3, 2013). Although GFP need not "identify every specific word" (Opp'n at 8), the TAC's vague allegation that Mr. Crowe stated "Garner needed further discounts from GFP to be passed on directly to the City" (TAC ¶ 42) falls far below Rule 9(b)'s heightened pleading standard. In *Livingston v. Shaffer*, the court held that "Shaffer's vague statement that he would 'hold on' to Livingston's property is not sufficiently certain to support a fraud cause of action. It is unclear what exactly Shaffer meant when he allegedly said that he would 'hold on' to Livingston's property or for how long he would 'hold on' to it." No. 02-22-00151-CV, 2023 WL 1860001, at *3 (Tex. App. Feb. 9, 2023). As in *Livingston*, the TAC's allegations lack the requisite specificity.

*Second,* as GFP admits (Opp'n at 8), "[a] false representation is material if a reasonable person would attach importance to and be induced to act on the information." *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010) (citation omitted). In *Potter*, the court held that the plaintiff could not establish materiality both because there was a time gap between the misrepresentation and the action in reliance, and because the alleged

misrepresentation itself was "inherently vague and ambiguous". *Id.* GFP likewise did not plead that Garner "presented any detailed, corroborating information, facts or figures to support the statement that might entice a reasonable person to attach importance to the statement." *Id*. Rather, Mr. Crowe's alleged statement "admits a variety of interpretations," rendering it too vague to survive dismissal. *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 153-54 (5th Cir. 2010) (statements that ConAgra "will not go off and leave you holding the bag," and that Pilgrim's would "have a long-term commitment to the City of Clinton" as its "community partner" were too vague to support a fraud claim).

*Third*, GFP wrongly claims that it justifiably relied on Mr, Crowe's statement because GFP "had no reason to question" it. (Opp'n at 10.) But "[a]n illusory promise will not give rise to a cause of action for fraud." *Livingston*, 2023 WL 1860001, at *3 (citation omitted). The alleged statement that "Garner needed further discounts from GFP to be passed on directly to the City" (TAC ¶ 42) is too illusory and indefinite to justify reliance thereon. *Emerald Aerospace, LLC v. Boeing Co.*, No. 3:22-CV-0717-B, 2022 WL 16701941, at *9 (N.D. Tex Nov. 3, 2022) ("[T]he promises that Boeing would award Emerald the . . . subcontracts were not specific as to the material terms of the contract. Because these promises were indefinite, any reliance thereon by Emerald was unjustified as a matter of law."); *see also Livingston*, 2023 WL 1860001, at *3 ("It is unclear what exactly Shaffer meant when he allegedly said that he would 'hold on' to Livingston's property or for how long he would 'hold on' to it.").[1]

[1] GFP's cases are inapposite. In *Holmes v. P.K. Pipe & Tubing, Inc.*, the court rejected an argument that Garner does not make here that a fraud claim based on the defendant's silence regarding the existence of a chemical waste site should be dismissed because the plaintiff had actual or constructive notice. 856 S.W.2d 530, 542 (Tex. App. 1993). *Grant Thornton LLP v. Prospect High Income Fund* further cuts against GFP's claim, as the court found that reliance was unjustified. 314 S.W.3d 913 (Tex. 2010).

*Fourth* and finally, GFP fails to plausibly allege a knowing or reckless false statement. GFP ignores that "[a]lthough Rule 9(b) expressly allows scienter to be averred generally, simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b). . . . The plaintiff[] must set forth specific facts supporting an inference of fraud." *Owens v. BAC Home Loans Servicing, L.P.*, No. CIV.A. H-11-2742, 2012 WL 1494231, at *4 (S.D. Tex. Apr. 27, 2012) (quotations and citations omitted); *Curtis v. Cerner Corp.*, 621 B.R. 141, 170 (S.D. Tex. 2020) ("Plaintiff makes no other allegations except for impermissibly conclusory allegations like '[w]hen [the speakers] made their material representations . . . they knew their representations were false . . . which the Court will disregard."). Here, the TAC relies solely on conclusory allegations to support the knowing falsity requirement. *Montalvo v. Specialized Loan Servicing LLC*, No. SA-21-CV-00964-JKP, 2022 WL 3031078, at 4 (W.D. Tex. July 30, 2022) ("[E]ven accepted as true, the allegation that SLS and U.S. Bank never intended to abide by the repayment terms and made a false representation of default with the intent that Montalvo act upon it does not support a fraud cause of action."); *Siragusa v. Arnold*, No. 3:12-CV-04497-M, 2014 WL 3512988, at *6 (N.D. Tex. July 16, 2014) (dismissing fraud claim "[b]ecause Plaintiff does not provide adequate factual detail concerning the alleged representations or Arnold's intent.") (citations omitted). Thus, the claim fails.

**B. GFP Does Not Adequately Plead Fraud to Obtain GFP's Pricing Information**

*First,* GFP does not sufficiently allege that Garner knew the representation on pricing information to pass savings to the City was false when it was made or that it was made recklessly. As discussed above, conclusory allegations are insufficient.

*Second,* contrary to GFP's assertion (Opp'n at 2, 11-12), the MSA's records inspection clause grants Garner the right to review GFP's pricing information for work completed at the

Facilities after that piece of work is done, not just after the *entire* project is completed. Section 4.6 of the MSA states that Garner shall have the right to audit this information "[f]or a minimum period of four (4) years from the ***completion of Work*** at each particular site or project provided pursuant to this Subcontract." (Maldonado Decl. Ex. A § 4.6) (emphasis added).[2] "Work" is defined in the MSA as follows:

> "Work", "services", or "project", whether or not capitalized, means labor, equipment, supplies, goods, or materials and related services to be furnished under the Task Order or Scope of Work and this Agreement at Contractor's and/or Client's site, and the carrying out of all obligations imposed by the Task Order or Scope of Work.

(*Id.* § 1.5.) The "completion of Work" in Section 4.6 means the completion of *any* "labor, equipment, supplies, goods or materials and related services" furnished at the Facilities.[3]

GFP wrongly asserts that providing its pricing information prior to signing the Transition Agreement justifies reliance. (Opp'n at 12.) But "reliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law," including any purported pre- or post-contractual representations. *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.,* 112 S.W.3d 854, 858 (Tex. App. 2003). GFP cannot simultaneously claim that it justifiably relied on Garner not to contract with the Vendors and that GFP intended to and did perform its obligations under the Transition Agreement, which assigned those Vendors to Garner. *Id.* at 858 ("[T]he party who

---

[2] As GFP admits, the Court has already rejected GFP's argument that the documents incorporated by reference in the TAC should not be considered. (Opp'n at 5.)

[3] Section 5 of the MSA provides that Garner will render payment for "completion of accepted Work" within forty-five days of "receipt of [GFP's] approved invoice." (*Id.* § 5.) Thus, each piece of work or services for which GFP generated an invoice to Garner was Work.

entered into the written contract while relying on a contrary oral agreement would have thereby itself entered into the written contract with an intent not to perform it.”).

In addition, the Fifth Circuit held in *Armstrong v. American Home Shield Corp.* that a merger clause similar to the one in the Transition Agreement precluded reasonable reliance. 333 F.3d 566, 570-72 (5th Cir. 2003). Other factors courts consider in determining whether a merger clause precludes the reliance element of a fraud claim include if the merger clause “was not buried in . . . a complex and lengthy contract” and if “there has been no suggestion that the parties were in unequal bargaining positions or that this was a contract of adhesion.” *Steinberg v. Brennan*, No. CIV.A. 3:03-CV-0562-, 2005 WL 1837961, at *5 (N.D. Tex. July 29, 2005) (citations omitted). GFP and Garner are both sophisticated parties who engaged in an arm’s-length, three-page transaction, which GFP does not claim it was fraudulently induced to enter. GFP acknowledged that it was terminated from the Facilities and agreed to “cooperate [with Garner] to effectively transition and assign” GFP’s obligations with its Vendors to Garner. (Maldonado Decl. Ex. G §§ B, 4.)

And, as discussed above, the alleged misrepresentation that Garner required pricing information “to determine certain available discounts on the projects as required by, and to be passed on in the form of additional savings to, the City” (TAC ¶ 110) is an “illusory promise” that is too indefinite to justify reliance and give rise to a fraud claim. *Livingston*, 2023 WL 1860001, at *3 (citation omitted); *Emerald Aerospace, LLC,* 2022 WL 16701941, at *9 (“Because these promises were indefinite, any reliance thereon by Emerald was unjustified as a matter of law.”).

*Third*, GFP fails to plead that providing pricing information to Garner is plausibly traceable to the alleged injury. GFP ignores that Garner could terminate GFP at any time and in Garner’s sole discretion. (Maldonado Decl. Ex. A §§ 3.3, 15.1.) GFP does not sufficiently plead that, but

for the alleged misrepresentation, GFP would not have been terminated and would have earned the profits it now claims. Because the injury just as plausibly could have occurred without the misrepresentation, the causal chain is too speculative and attenuated to support a fraud claim. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (causation "cannot be supported by mere conjecture, guess, or speculation."); *William Marsh Rice Univ. v. Arrowhead Rsch. Corp.*, No. CV 14-03496, 2015 WL 10987080, at *6 (S.D. Tex. July 23, 2015) (plaintiff's "allegations do not support a finding that Defendants' misrepresentations were a substantial factor in causing injuries to Plaintiff 'without which the harm would not have occurred.'").

*Fourth*, GFP cannot plausibly allege that it "has been injured and damaged by: (1) losing profits it would have made but for the further discounts it provided based on Defendants' false representation that they were needed for the sole benefit of the City; and (2) losing profits it would have made but for being cut out of the Asylum Seeker Facilities." (TAC ¶ 114.) As discussed above, GFP was never entitled to additional profits from the Facilities because Garner could and did exercise its contractual right to terminate GFP and GFP's Vendor relationships were then voluntarily transitioned to Garner. (Maldonado Decl. Ex. G §§ B, 3, 4.)

## II. GFP STILL HAS NO FRAUDULENT INDUCEMENT CLAIM

GFP also cannot save its fraudulent inducement claim. *First*, the claim lacks the requisite specificity. GFP makes no argument in opposition (Opp'n at 17), so Garner incorporates by reference its argument in its opening brief and above (*see supra* Section I.A), which pertain to the same alleged misrepresentation by Mr. Crowe. (TAC ¶¶ 42, 110, 149.)

*Second*, GFP fails to sufficiently plead that it was induced to sign a contract with Garner. GFP ignores that "[t]o state a claim for fraudulent inducement under Texas law a party must allege all of the elements of fraud in addition to the fact that ***he entered into a binding agreement as a***

***result of an alleged misrepresentation***." *Murphree v. Godshall*, No. CIV.A. H-13-0453, 2014 WL 4782936, at *6 (S.D. Tex. Sept. 24, 2014) (emphasis added). A case cited by GFP – *Formosa Plastics Corp., USA v. Presidio Eng'rs & Contractors,* 941 S.W.2d 138, 142 (Tex. App.—Corpus Christi 1995), *rev'd on other grounds,* 960 S.W.2d 41 (Tex. 1998) – demonstrates why GFP's claim fails. The court determined that Formosa defrauded Presidio by inducing Presidio to sign a contract and to continue performing on the contract. *Id.* at 145-146. By contrast, the TAC does *not* allege that GFP was fraudulently induced to continue performing the MSA or to sign the Transition Agreement, but that GFP was fraudulently induced to "agree to multiple discounts" that are not reflected in either contract. (TAC ¶ 149.) Thus, GFP's fraudulent inducement claim fails.

**III. GFP STILL HAS NO TORTIOUS INTERFERENCE CLAIM**

*First*, GFP still does not plausibly allege a reasonable probability of entering business relationships with the Vendors. GFP asserts that it adequately plead "preexisting" business relationships. (Opp'n at 19.) GFP relies on *Wolf v. Cowgirl Tuff Co.*, in which the court found sufficient detail about the plaintiff's relationship with a specific sponsor but rejected vague allegations about "other sponsors." No. 1:15-CV-1195 RP, 2016 WL 4597638, at *6 (W.D. Tex. Sept. 2, 2016). By contrast, the TAC contains only conclusory allegations concerning five Vendors (AAA Mobile Solutions, Granny's Alliance, Hightowers Petroleum Company, Select Event Group, and Sunbelt Rentals), which collectively appear in three conclusory statements in the TAC . (TAC ¶¶ 39, 97, 99.) That is inadequate. *See M-I LLC v. Stelly,* 733 F. Supp. 2d 759, 776 (S.D. Tex. 2010) (rejecting conclusory allegations of business relationships).

Moreover, the TAC's allegations about the remaining Vendors (Lantier Tent Structures, Main Attractions, Rentals to Go, and iRent Everything) all concern conduct that occurred *after* the Transition Agreement was executed on April 5, 2024. (TAC ¶¶ 80 (April 6, 2024), 95 (April 13,

2024), 97-98 (April 14, 2024), 103 (May 17, 2024).) GFP can have no plausible expectation of continued business with the Vendors *after* it was terminated and voluntarily transitioned those Vendor contracts to Garner per the Transition Agreement. (Maldonado Decl. Ex. G §§ B, 3, 4.).

*Second*, GFP ignores that "interference is not improper if the defendant had no desire to effectuate the interference by his action but knew that it would be a mere incidental result of conduct he was engaging in for another purpose." *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.,* No. 4:15-CV-00627, 2016 WL 8648927, at *11 (S.D. Tex. Mar. 29, 2016) (quotations and citations omitted). GFP wrongly argues that *In re Horton*, 85 F.3d 625 (5th Cir. 1996) (citing *Horton v. Robinson,* 776 S.W.2d 260, 265-66 (Tex. App.—El Paso 1989, no writ), holds that seeking profits by cutting out a middle-man is, on its own, evidence of willfulness and malice. The court held that the defendant acted maliciously in breaching his fiduciary duty to the plaintiff and breaching the parties' contract. *Id*. Here, Garner owes no fiduciary duty to GFP, the MSA was terminable-at-will, and GFP does not claim wrongful termination.

In addition, neither the Agreements nor the law preclude Garner from seeking better prices directly from the Vendors and cutting out unnecessary middlemen. In *Specialties of Mexico Inc. v. Masterfoods USA*the court dismissed a tortious interference claim because "Plaintiffs have not alleged how Defendant's instruction to Sell-Thru to stop selling their goods to Plaintiffs rises above the level of 'sharp or unfair' conduct, and amounts to an independently actionable tort." No. CIV.A. L-09-88, 2010 WL 2488031, at *10 (S.D. Tex. June 14, 2010), at *10 (citing *Wal-Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 726 (Tex. 2001)) ("[A] plaintiff could not recover against a defendant whose persuasion of others not to deal with the plaintiff was lawful. Conduct that is merely 'sharp' or unfair is not actionable."); *see also Times Herald Printing Co. v. A.H. Belo Corp*., 820 S.W.2d 206, 215 (Tex. App. 1991) ("The [plaintiff]'s interest in UPS

features was that of a prospective contractual relation for which it had no assurance, only an expectancy, under contracts that were terminable at will. . . The competitor, then, is free to cause the termination and obtain the future benefits for his own competitive advantage, for example, by offering better contract terms or a higher price.").

*Third*, GFP does not sufficiently allege that Garner's actions were independently tortious. GFP concedes that independently tortious conduct requires alleging that the "defendant's conduct would be actionable under a recognized tort." (Opp'n at 21) (citing *Greater Houston Transp. Co. v. Uber Techs., Inc.*, No. CIV.A. 4:14-0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10, 2015), and *Total Quality Logistics, LLC v. Medellin*, No. SA-23-CV-00333-XR, 2023 WL 7289396, at *8 (W.D. Tex. Nov. 2, 2023)). In *Greater Houston*, the court held that the "[p]laintiffs have not pleaded independently tortious conduct" because alleged violations of local ordinances "are not actionable." 2015 WL 1034254, at *19. And in *Total*, the court found independently tortious conduct based on misappropriation of trade secrets – an allegation GFP does not make. GFP fails to explain how Garner's actions "rise[] above the level of 'sharp or unfair' conduct, and amounts to an independently actionable tort." *Specialties of Mexico Inc,* 2010 WL 2488031, at *10. The fraud claim, even if it was plausibly linked to the interference, is not actionable, as discussed above.

There was also nothing improper about Garner requesting pricing information. Indeed, the documents incorporated by reference demonstrate that Garner requested a breakdown of *GFP's pricing to Garner* – not Vendors' pricing to GFP. (TAC ¶¶ 45-46, 54; Maldonado Decl. Exs. D-E.) GFP attempts to evade this reality by arguing that it was "easy for Garner to reverse-engineer" the pricing information (Opp'n at 22), but the TAC provides no factual support for this speculation.

Moreover, GFP cannot salvage its tortious interference claim because the TAC fails to explain how or why any of the information it provided to Garner was confidential or allege that

GFP took any steps to protect that information. The confidentiality clause in the MSA protects only *Garner's information, not GFP's*, and GFP did not seek any confidentiality or other non-use agreement. (Maldonado Decl. Ex. A § 14.1-4.) *See Fast Cap. Mktg., LLC v. Fast Cap. LLC*, No. CIV. A. H-08-2142, 2008 WL 5381309, at *18 (S.D. Tex. Dec. 24, 2008) (dismissing tortious interference claim where the information was not "confidential information" under the contract).

*Fourth*, GFP also fails to allege that Garner's actions proximately caused injury. "To recover for tortious interference with prospective business relations, the plaintiff must demonstrate that the alleged interference prevented the plaintiff from securing a contract." *Brenham Oil & Gas, Inc. v. TGS-NOPEC Geophysical Co.*, 472 S.W.3d 744, 770 (Tex. App. 2015). As demonstrated above, the TAC is devoid of factual allegations that Garner reached out to the Vendors before the Transition Agreement was executed on April 5, 2024. (TAC ¶¶ 80 (April 6, 2024), 95 (April 13, 2024), 97-98 (April 14, 2024), 103 (May 17, 2024)). And GFP agreed in the Transition Agreement that GFP was terminated and would transition the Vendors to Garner. (Maldonado Decl. Ex. G §§ B, 3, 4.) Thus, GFP fails to allege any business that it would have contracted with each Vendor but for Garner's alleged interference.[4]

*Fifth* and finally, without a reasonable probability of business with the Vendors but for Garner's interference, there can be no resulting injury. GFP's allegations thus "amount to nothing more than a formulaic recitation of the elements of these causes of action, which is insufficient to state a claim." *Priority Design & Serv., Inc. v. Plaza,* No. SA-19-CV-00058-OLG, 2019 WL 2124677, at *5 (W.D. Tex. May 15, 2019).

[4] The case cited to by GFP, *Wellogix, Inc. v. Accenture, LLP*, 788 F. Supp. 2d 523, 548–49 (S.D. Tex. 2011), undermines its argument. There, this Court dismissed a tortious interference with contract claim on summary judgment because there was no evidence of interference and the tortious interference with prospective relations claim was voluntarily withdrawn by the plaintiff.

**CONCLUSION**

GFP's claims for fraud (Count I), fraudulent inducement (Count II), and tortious interference (Count V) should be dismissed with prejudice.

Dated: June 12, 2025

McDERMOTT WILL & EMERY LLP

/s/ *David Genender*

David Genender
2501 North Harwood Street, Suite 1900
Dallas, TX 75201
(214) 295 8000

Jordan Kazlow
845 Texas Avenue, Suite 4000
Houston, TX 77002-1656
(713) 653-1700

Andrew B. Kratenstein (admitted *pro hac vice*)
Alexandra Nasar (admitted *pro hac vice*)
One Vanderbilt Avenue
New York, New York 10017-3852
(212) 547-5400

*Attorneys for Garner Environmental Services, Inc.*