United States District Court
Southern District of Texas
**ENTERED**
August 15, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| GFP ENTERS., LLC, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION NO. 4:24-cv-04517 |
| VS. § | |
| § | |
| GARNER ENV'T SERVS., INC., § | |
| § | |
| Defendant. § | |

**MEMORANDUM & ORDER**

This case arises from an alleged breakdown of a contractual relationship between Plaintiff GFP Enterprises, LLC and Defendant Garner Environmental Services, Inc. Before the Court is Defendant's Partial Motion to Dismiss. ECF No. 91. For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part Defendant's Motion.

I.   BACKGROUND

In response to an emergency migrant housing crisis, New York City ("City") allegedly contracted with Defendant to provide environmental response services at the Floyd Bennett Field and Randall's Island Asylum Seeker Facilities ("Facilities"). ECF No. 88 at 5. Defendant allegedly subcontracted certain services to Plaintiff pursuant to a Master Agreement. ECF No. 88 at 6. Plaintiff claims it then entered into multiple contractual agreements with its longtime vendors for services and resources like tents; power and Heating, Ventilation, and Air Conditioning; sanitation; personnel; and fueling for the Facilities. *See* ECF No. 88 at 9.

1

On February 14, 2024, months after Plaintiff and Defendant entered into their contracts and Plaintiff had already begun providing goods and services to the Asylum Seeker Facilities, Plaintiff alleges that Defendant "represented that [it] needed further discounts from [Plaintiff] to be passed on directly to the City." ECF No. 88 at 9. Plaintiff claims that it then further discounted "its already heavily discounted rates for the sole benefit of the City." ECF No. 88 at 9.

Plaintiff then claims that on or about March 7, 2024, it received a phone call from Defendant's senior project manager, JP Temperilli, informing Plaintiff that Lawrence Crowe, Plaintiff's then-contact with Defendant, had been terminated and that JP Temperilli and Carl Mugglin would be Plaintiff's contacts moving forward. ECF No. 88 at 10. Plaintiff then alleges that from March 8-10, 2024, JP Temperilli emailed, called, and texted Plaintiff requesting a "breakdown of all [costs per person per day ("PPPD")] pricing secured by [Plaintiff] for both Randall's Island and Floyd Bennett Field." ECF No. 88 at 11. Plaintiff claims that this request for PPPD pricing is unusual, deviates from the customs and practices of the emergency services industry, and generally, Plaintiff treats its pricing with its vendors as confidential. ECF No. 88 at 11. Regardless, Plaintiff alleges that in multiple telephone conversations, JP Temperilli falsely represented to Plaintiff that this information was "required in order to assess savings to pass on to the City," so Plaintiff, in trying to keep a good, cordial business relationship, provided its pricing information to Defendant. ECF No. 88 at 12. Plaintiff claims, however, that "[l]ittle if any cost savings were actually passed on by [Defendant] to the City. Instead, [Defendant] utilized [Plaintiff's] confidential pricing information to undermine and interfere with [Plaintiff]'s contractual relationships with its vendors, all with the goal of squeezing [Plaintiff] out of the projects." ECF No. 88 at 2-3.

Plaintiff then alleges that after providing its pricing information to Defendant, Defendant directly communicated with many of Plaintiff's vendors, "actively utilizing [Plaintiff]'s confidential breakdown of preferred pricing to undercut [Plaintiff] and completely remove it from the Asylum Seeker Facilities." ECF No. 88 at 14. Plaintiff further alleges Defendant contacted the vendors it already had contracts with in an attempt to undercut Plaintiff's pricing as well as ask that vendors "invoice [Defendant] directly" rather than going through Plaintiff. ECF No. 88 at 20. These actions, Plaintiff contends, interfered with Plaintiff's existing contracts with its vendors, and not only did Defendant break its contractual agreements with Plaintiff, but Plaintiff alleges that Defendant actively sought to break contractual agreements between Plaintiff and its vendors. ECF No. 88.

## II.  LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). That said, a complainant must plead "enough facts to state a claim of relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This must be more than "[a]n unadorned, the-defendant-unlawfully-harmed-me accusation" or "a

sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While the Court must accept well-pleaded facts as true, legal conclusions are not entitled to the same assumption of truth. *Id.* The Court must limit its review "to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

## III. ANALYSIS

### A. Tortious Interference with Prospective Business Relations

Under Texas law, to prevail on a claim for tortious interference with prospective business relations, a plaintiff must show:

> (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result.

*Geolink Ltd. (U.K.) v. Mahmood*, No. 4:21-CV-803, 2022 WL 2124519, at *7 (S.D. Tex. Mar. 18, 2022).

At minimum, Plaintiff's claim fails on prong 3—"the defendant's conduct was independently tortious or unlawful." *Id.*; *see* ECF No. 43. As the Supreme Court of Texas has explained:

> By "independently tortious" we mean conduct that would violate some other recognized tort duty. [B]y way of example, a defendant who threatened a customer with bodily harm if he did business with the plaintiff would be liable for interference because his conduct toward the customer—assault—was independently tortious, while a defendant who competed legally for the customer's business would not be liable for interference.

4

*Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 713 (Tex. 2001). "Thus defined, an action for interference with a prospective contractual or business relation provides a remedy for injurious conduct *that other tort actions might not reach* (in the example above, the plaintiff could not sue for assault), but only for conduct that is already recognized to be wrongful under the common law or by statute." *Id.* (emphasis added).

It is unclear in this case what the "independently tortious or unlawful" conduct is. *Id.* Plaintiff has argued in previous hearings in this case and in its briefing on this Motion that it is "not talking about a trade secret situation here, but [it is] talking about obtaining information, pricing information, under false pretenses, and utilizing that information under false pretenses." ECF No. 43; *see* ECF No. 80 at 17. In other words, Plaintiff appears to be arguing that Defendant's allegedly false claim that it would use Plaintiff's pricing information for City savings is the "independently tortious or unlawful" conduct. *Id.* But since, as Plaintiff concedes, such information is not a trade secret, it is unclear how such "conduct would be actionable under a recognized tort." *Greater Hou. Transp. Co. v. Uber Techs., Inc.*, No. 4:14-0941, 2015 WL 1034254, at *19 (S.D. Tex. Mar. 10, 2015).

Even if such conduct could be "actionable under a recognized tort," *id.*, Plaintiff could simply sue Defendant under that tort cause of action, since Plaintiff was the one harmed by such alleged misappropriation of confidential information. But the Supreme Court of Texas has made clear that "an action for interference with a prospective contractual or business relation provides a remedy for injurious conduct *that other tort actions might not reach* . . . , but only for conduct that is already recognized to be wrongful under the common law or by statute." *Sturges*, 52 S.W.3d at 713 (emphasis added). In *Sturges*, the Supreme Court of Texas elaborates on this point by providing multiple examples in which a defendant committed a tort offense against a third-

party in order to prevent them from entering into business relations with the plaintiff (e.g., if a defendant threatens a third party with assault if they contract with plaintiff). *Id.* The reason why a plaintiff in these situations could then bring an action for tortious interference with a prospective contractual or business relation is because the plaintiff could not sue the defendant for committing a tort offense against a third-party—hence why the Supreme Court of Texas made sure to emphasize that an action for tortious interference "provides a remedy for injurious conduct that other tort actions might not reach." *Id.*

There are no allegations here that Defendant committed an independently tortious or unlawful act against a third party that interfered with Plaintiff's prospective business relations with those third parties. Therefore, the Court **GRANTS** the Motion on this claim and **DISMISSES** Plaintiff's tortious-interference-with-prospective-business-relations claim **WITH PREJUDICE**.

### B. Fraudulent Inducement

Fraudulent inducement "is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. . . . [W]ith a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). "To state a claim for fraudulent inducement under Texas law a party must allege all of the elements of fraud in addition to the fact that he entered into a binding agreement as a result of an alleged misrepresentation." *Murphree v. Godshall*, No. H-13-0453, 2014 WL 4782936, at *6 (S.D. Tex. Sep. 24. 2014).

Plaintiff's fraudulent-inducement claim fails because Plaintiff does not allege that it "*entered into* a binding agreement as a result of an alleged misrepresentation." *Id.* (emphasis added). Indeed, the misrepresentation Plaintiff's fraudulent-inducement claim centers on is its

6

allegation that Defendant represented to Plaintiff that the City was "requiring [Defendant] to obtain additional discounts beyond [Plaintiff's] already-discounted rates so those savings could be passed on directly to the City." ECF No. 88 at 31. But this misrepresentation did not make Plaintiff *enter into* a binding agreement with Defendant; it merely made Plaintiff discount its prices on an *already preexisting* contract between the parties.

The Court does note that the Fifth Circuit, in interpreting Texas law, has recognized a type of fraudulent-inducement claim called "string-along fraud," which is "where the fraud occurs after an agreement is entered into and induces a party to continue performing throughout the course of the agreement." *Matter of Cyr*, 838 F. App'x 54, 59 n.3 (5th Cir. 2020) (citing *Int'l Bus. Machs. Corp. v. Lufkin Indus., LLC*, 573 S.W.3d 224, 233 (Tex. 2019)). Plaintiff does not state, either in its operative complaint or in its briefing on this Motion, that it is a bringing a claim of "string-along fraud." *Id.* But Plaintiff does argue in its briefing on this Motion that Defendant's "misrepresentations inducing [Plaintiff] to continue discounting its performance under its contracts with [Defendant] constitute fraudulent inducement," which, when read in a favorable light, could be construed as a type of argument for "string-along fraud." *Id.*; ECF No. 96 at 24.

But even if Plaintiff's operative complaint could be construed as Plaintiff bringing a string-along-fraud claim, the Supreme Court of Texas has stated that the misrepresentation in a fraudulent-inducement case—even in a string-along-fraud case—must be "a false promise of future performance made with a present intent not to perform." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). And here, Plaintiff is not alleging that the misrepresentation was a false promise by the Defendant that it would continue to perform on the contract. Plaintiff instead alleges that the misrepresentation was that Defendant needed discounts on the relevant contract for the sole purpose of passing those savings on to the City, when in fact Defendant did not intend to pass

7

on savings to the City at all. Therefore, even under a string-along-fraud theory, Plaintiff's fraudulent-inducement theory fails.

The Court therefore **GRANTS** the Motion on this claim and **DISMISSES** Plaintiff's fraudulent-inducement claim **WITH PREJUDICE**.

### C. Fraud

Plaintiff claims that Defendant committed fraud when it represented to Plaintiff that it needed Plaintiff's confidential pricing information with its vendors in order to pass on savings to the City. ECF No. 88 at 23-25. Plaintiff alleges that Defendant never actually believed it needed the information to pass on savings to the City; Defendant instead wanted the information so that it could use such information "to undermine [Plaintiff] and cut it out of the Asylum Seeker Facilities." ECF No. 88 at 24. Plaintiff also claims that Defendant committed fraud when it represented to Plaintiff that it required "additional discounts on [Plaintiff's] goods and services for the sole benefit of the City," ECF No. 88 at 24, and Plaintiff claims that it would "not have provided additional discounts . . . if [Defendant] had disclosed that it intended to only use the discounts for its own increased profit," ECF No. 88 at 25.

> To state a claim for fraud, a plaintiff must plead that
>
> (1) a material representation was made, (2) that the representation was false[] when [it] was made, (3) the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion, (4) that the speaker made the misrepresentation with the intent that the other party should act upon it, (5) the party acted in reliance on the misrepresentation, and (6) the party thereby suffered injury.

*Farshchi v. Wells Fargo Bank, N. Am.*, No. CV-H-15-1692, 2016 WL 2858903, at *6 (S.D. Tex. May 13, 2016) (quotations and citations omitted).

For a fraud claim to survive a motion to dismiss, a plaintiff must allege with particularity that "the speaker knew [a material and false representation] was false or made it recklessly

without any knowledge of the truth and as a positive assertion." *Id.* (quotations and citations omitted). Conclusory allegations are insufficient. *Curtis v. Cerner Corp.*, 621 B.R. 141, 170 (S.D. Tex. 2020). "At this stage of the litigation the issue is . . . whether the plaintiff has alleged with particularity enough facts that, if true, would plausibly establish that defendant made the statements at issue either knowing that they were false or with reckless disregard to their truth." *Sunshine Kids Found. v. Sunshine Kids Juv. Prods., Inc.*, No. H-09-2496, 2010 WL 1170017, at *4 (S.D. Tex. Mar. 23, 2010).

Plaintiff has alleged enough to pass muster at this stage of litigation. First, Plaintiff's allegations pass prong one of the above-referenced pleading standard for fraud claims—that "a material representation was made." *Farshchi*, 2016 WL 2858903, at *6. Plaintiff alleges materiality by claiming that it "would not have provided additional discounts or disclosed its preferred pricing information if [Defendant] had disclosed that it intended to only use the discounts for its own increased profit and/or that it intended to use the preferred pricing information to cut out [Plaintiff] from the Asylum Seeker Facilities because the information is proprietary and would, and did, cause competitive harm." ECF No. 88 at 25. Prongs two, three, and four—that the representations were false when they were made, that the speaker knew they were false, and that the speaker made the misrepresentations with the intent that the other party should act upon them—are also met. *See id.* Plaintiff alleges that it eventually learned that Defendant's "representation that it was attempting to save the City money indeed was a ruse. In fact, a former [employee of Defendant] has since confirmed that the requested savings were never intended to be passed on to the City, and that [Defendant] was trying to increase its own profits." ECF No. 88 at 16. Finally, prongs five and six—that Plaintiff acted in reliance on the misrepresentations, and thereby suffered injury—are met by the operative complaint's

allegations. *See id.* Plaintiff alleges that it provided Defendant "additional discounts beyond its already heavily discounted prices[,] and . . . [Plaintiff's] confidential preferred pricing information, which [Defendant] ultimately used to undermine [Plaintiff] and cut it out of the Asylum Seeker Facilities." ECF No. 88 at 24-25.

Because Plaintiff has adequately alleged all six prongs of fraud, the Court **DENIES** the Motion's request to dismiss Plaintiff's fraud claim and will allow said claim to proceed.

### D. CONCLUSION

The Court **GRANTS** in part and **DENIES** in part Defendant's Motion. ECF No. 91. Plaintiff's fraudulent-inducement claim is **DISMISSED WITH PREJUDICE**. Plaintiff's tortious-interference-with-prospective-business-relations claim is **DISMISSED WITH PREJUDICE**. Plaintiff's fraud claim will be allowed to proceed.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 15th day of August, 2025.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE